NAT HARRISON ASSOCIATES, INC. v. NORTH CAROLINA
STATE PORTS AUTHORITY

No. 127

(Filed 14 January 1972)

1. **Rules of Civil Procedure § 56— summary judgment**

Summary judgment may be granted where the pleadings or proof disclose that no cause of action or defense exists. G.S. 1A-1, Rule 56(c).

2. **State § 4— State Ports Authority — agency of the State**

The North Carolina State Ports Authority is an instrumentality and agency of the State, created and empowered to accomplish a public purpose.

3. **State § 4— action against Ports Authority — recovery outside the contract**

In an action instituted against the State Ports Authority under G.S. 143-135.3, summary judgment was properly allowed in favor of the Ports Authority as to counts in which plaintiff sought to recover for loss of profits due to alleged delay by defendant and by other contractors, and for losses due to extra payments made to German sup-

pliers by reason of devaluation of the German mark, where there was no provision in the contracts for recovery of such damages, since plaintiff is entitled to recover only under the terms of his contract.

**4. State § 4— contract action against Ports Authority — failure to complete contract — "as-built" drawings**

Plaintiff's contract action against the State Ports Authority under G.S. 143-135.3 should have been dismissed where plaintiff had not completed a material part of its contract by furnishing "as-built" drawings to defendant prior to filing a claim with the Director of the Department of Administration and instituting the action in superior court.

**5. State § 4— contract against Ports Authority — failure to complete contract — affidavit that no liens exist**

Plaintiff's contract action against the State Ports Authority should have been dismissed where plaintiff has failed to comply with a contract requirement that it furnish defendant with an affidavit to the effect that all payments for materials, services, or any other reason in connection with the contract have been satisfied and that no claims or liens exist against the contractor in connection with these contracts.

APPEAL by plaintiff and by defendant from *Clark, J.,* 4 January 1971 Session of WAKE Superior Court, transferred to this Court for initial appellate review under our general transferral order dated 31 July 1970.

This action arose upon certain contracts between plaintiff and defendant. Defendant solicited bids on nine contracts for portions of the work involved in the construction of a bulk phosphate handling facility at Morehead City. Plaintiff submitted separate bids for four of these: (1) the Ship Loading Tower, (2) the Bucket Wheel Reclaimer, (3) the Conveyor System, and (4) the Dust Collection System, and a combined bid on all four of these items in the amount of $3,523,850. The combined bid was accepted, but at the request of defendant and the Architect-Engineer four separate contracts were signed, with the separate amounts being computed as a division of the combined bid. These contracts were designated as Contracts Nos. 1, 2, 3, and 7. Various other contractors were awarded the remaining five contracts.

All contractors, including plaintiff, were notified to begin work on 21 December 1966. Each of plaintiff's four contracts specified the number of days in which the work was to be

completed, the time varying in each contract. Contracts Nos. 1, 2, and 3 provided for liquidated damages of $500 per day for each day's delay in excess of the number of days specified in the contracts, and Contract No. 7 provided for liquidated damages of $200 per day for each day's delay in excess of the specified time. All the contracts provided that the beginning time and the time for completion would be of the essence.

Each contract provided for an Architect-Engineer, and Section 35 of the General Conditions stated in pertinent part:

"The Architect-Engineer shall give all orders and directions contemplated under this contract and specifications relative to the execution of the work. The Architect-Engineer shall determine the amount, quality, acceptability, and fitness of the several kinds of work and materials which are to be paid for under this contract and shall decide all questions which may arise in relation to said work and the construction thereof. The Architect-Engineer estimates and decisions shall be final and conclusive, except as herein otherwise expressly provided. In case any question shall arise between the parties hereto relative to said contract or specifications, the determination or decision of the Architect-Engineer shall be a condition precedent to the right of the Contractor to receive any money or payment for work under this contract affected in any manner or to any extent by such question.

" . . . Any differences or conflicts in regard to their work which may arise between the Contractor under this contract and other contractors performing work for the Owner shall be adjusted and determined by the Architect-Engineer."

Numerous delays were encountered in completing the work, and at the final inspection on 20 March 1969 the Architect-Engineer for the project determined that plaintiff had completed work under Contracts Nos. 1, 2, and 3 on 12 March 1969, and had completed work under Contract No. 7 on 1 October 1968. The Architect-Engineer also determined that an extension of time of 21 days should be allowed on Contract No. 7, and an extension of 112 days should be allowed on Contract No. 3, even though plaintiff had neither given notice of delays nor requested any extension of time as required by the contract.

After allowing these extensions, the Architect-Engineer further found that there was a delay of 221 days on Contract No. 1, of 210 days on Contract No. 2, of 132 days on Contract No. 3, and 70 days on Contract No. 7. Based on these findings, liquidated damages for the delay in completion of the work under the terms of the four contracts would be $295,500.

In September 1969, plaintiff was informed that defendant was going to retain the final payment of $182,246 due plaintiff under the contracts and apply this amount to defendant's claim for liquidated damages. On 16 February 1970 plaintiff, under G.S. 143-135.3, filed a verified claim with the Director of the Department of Administration claiming that defendant owed the plaintiff $589,354.50, consisting of the final payment of $182,246 retained by defendant, plus claims for additional spare parts furnished, measured job costs, overhead losses, capital interest losses and loss of profits, loss due to revaluation of the German mark, claims for additional drawings furnished, and interest. Defendant replied to this claim denying any indebtedness to the plaintiff and claiming a total of $295,500 as liquidated damages on the four contracts.

The Director, after an extensive hearing, made findings of fact, entered conclusions of law, and awarded plaintiff $78,-023.81. The Director ordered plaintiff to furnish defendant properly executed affidavits stating that plaintiff had paid all claims, liens, etc., arising out of the four contracts, and further ordered that the plaintiff furnish defendant "as-built" drawings of the construction work done, as provided for in the contracts. Defendant accepted the decision of the Director as to certain change orders in the sum of $10,127.76, but refused the remainder of the Director's award.

Plaintiff then filed an action in the Superior Court of Wake County, as authorized by G.S. 143-135.3, alleging six counts. The first alleged that plaintiff had completed its four contracts by 6 November 1968, that any delay in the completion of the work was caused by acts of the defendant or of the other contractors or other causes beyond plaintiff's control, that no liquidated damages should be assessed against the plaintiff, and that plaintiff was entitled to recover $178,746 wrongfully retained by defendant, with interest thereon from 6 November 1968. The second count alleged that plaintiff had suffered certain damages or loss of profits due to being delayed by other

Harrison Associates v. State Ports Authority

contractors on this project and was entitled to recover $297,-427.44 for damages for this delay, with interest from November, 1968. The third count alleged that due to delay in the completion of the contracts caused by defendant or other contractors, plaintiff lost the sum of $6,435 in extra payments made to German subcontractors and suppliers, due to the fact that the German mark was revalued during the period of these delays. The fourth count alleged that plaintiff had been forced to furnish, under protest, spare parts of the value of $39,568.09 not required to be furnished under the terms of one of the contracts. The fifth count alleged that the plaintiff had been forced to furnish extra drawings, tools, and parts not required by its contract in the value of $8,550. The sixth count sought recovery of the $10,127.76 granted by the Director for change orders. (The parties stipulated that this item of $10,127.76 should be paid.)

Defendant in its answer to the complaint denied all allegations and counterclaimed for liquidated damages in the sum of $295,500, alleging that all delays not covered by extensions of time were the sole fault of plaintiff.

Prior to trial defendant moved to dismiss the action, and alternatively moved for summary judgment as to counts two and three of the complaint. The motion to dismiss was denied. The trial judge allowed summary judgment in favor of defendant on the second and third counts, for the reason that the terms of the contracts did not provide for the recovery of such increased job costs, overhead losses, capital interest losses and loss of profit. The case was tried by Judge Clark without a jury at the 4 January 1971 Session of Wake Superior Court. Plaintiff moved to dismiss the counterclaim of defendant at the beginning of the trial, at the close of plaintiff's evidence, and at the close of all the evidence. These motions were denied.

After trial the court made findings of fact, entered conclusions of law, and awarded judgment for the plaintiff in the sum of $210,746, with interest from 26 April 1969, and the sum of $10,127.76, with interest from 14 August 1969, "said award being contingent upon the furnishing by plaintiff to defendant of a contractor's affidavit for Contracts 1, 2, 3 and 7 to the effect that no claims or liens exist against plaintiff in connection with said contracts."

Plaintiff appealed from the entry of summary judgment for defendant on counts two and three of its complaint, and defendant appealed from the entry of judgment in favor of the plaintiff.

*Broughton, Broughton, McConnell & Boxley by John D. McConnell, Jr., and J. Melville Broughton, Jr., for plaintiff appellant and plaintiff appellee.*

*Attorney General Robert Morgan, Assistant Attorney General Eugene A. Smith, and Staff Attorney Rafford E. Jones for defendant appellant and defendant appellee.*

MOORE, Justice.

### PLAINTIFF'S APPEAL

[1] Plaintiff contends that the trial court erred in granting summary judgment in favor of defendant on the second and third counts in the complaint. Plaintiff alleged in the second count that plaintiff had anticipated profits on the four contracts of $497,025, but due to delays caused by defendant and other contractors, it realized profits of only $111,401.66. In this count plaintiff sought to recover the lost profits of $297,427.44. The third count in the complaint alleged that since December of 1968, when the $178,746 final payment was retained by defendant, the German mark had been revalued, requiring the plaintiff to pay a German supplier an additional $6,435 which would not have been necessary if this retainage had been timely released. On this count plaintiff sought to recover the $6,435. Summary judgment for defendant was granted on these two counts under the provision of Rule 56(c) of the Rules of Civil Procedure. G.S. 1A-1.

Rule 56(c) provides:

" . . . The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. . . . "

This rule provides for the disposition of cases where there is no genuine issue of fact, and its purpose is to eliminate formal

trials where only questions of law are involved. Where the pleadings or proof disclose that no cause of action or defense exists, a summary judgment may be granted. *Kessing v. Mortgage Corp.,* 278 N.C. 523, 180 S.E. 2d 823 (1971) ; 2 McIntosh, N. C. Practice and Procedure § 1660.5 (2d Ed., Phillips' Supp. 1970) ; 3 Barron and Holtzoff, Federal Practice and Procedure § 1234 (Wright Ed., 1958).

Procedurally, the question in the present case is: Assuming the facts alleged in the second and third counts in the complaint to be true, was the defendant entitled to summary judgment as a matter of law? We think so.

Plaintiff brought its suit under G.S. 143-135.3, which provides:

> "Upon completion of any contract for construction or repair work awarded by any State board to any contractor, under the provisions of this article, should the contractor fail to receive such settlement as he claims to be entitled to *under terms of his contract,* he may, within 60 days from the time of receiving written notice as to the disposition to be made of his claim, submit to the Director of the Department of Administration a written and verified claim for such amount as he deems himself entitled to *under the terms of said contract,* setting forth the facts upon which said claim is based. In addition, the claimant, either in person or through counsel, may appear before the Director of the Department of Administration and present any additional facts and arguments in support of his claim. Within 90 days from the receipt of the said written claim, the Director of the Department of Administration shall make an investigation of the claim and may allow all or any part or may deny said claim and shall have the authority to reach a compromise agreement with the contractor and shall notify the contractor in writing of his decision.

> "As to such portion of the claim which may be denied by the Director of the Department of Administration, the contractor may, within six months from receipt of the decision, institute a civil action for such sum as he claims to be entitled to *under said contract* by the filing of a verified complaint and issuance of summons in the Superior Court of Wake County or in the superior court of any

county where in the work under said contract was performed. The procedure shall be the same as in all civil actions except as herein and as hereinafter set out.

"All issues of law and fact and every other issue shall be tried by the judge, without jury; provided that the matter may be referred in the instances and in the manner provided for in article 20 of chapter 1 of the General Statutes." (Emphasis added.)

**[2]** The North Carolina State Ports Authority, defendant in this action, was created by Article 22 of Chapter 143 of the General Statutes, and is an instrumentality and agency of the State, created and empowered to accomplish a public purpose. G.S. 143-217; *Webb v. Port Commission,* 205 N.C. 663, 172 S.E. 377 (1934).

In *Insurance Co. v. Gold, Commissioner of Insurance,* 254 N.C. 168, 172, 118 S.E. 2d 792, 795 (1961), Justice Clifton Moore stated for the Court:

" ' . . . An action against a commission or board created by statute as an agency of the State where the interest or rights of the State are directly affected is in fact an action against the State.' *Insurance Co. v. Unemployment Compensation Commission, supra* [217 N.C. 495, 8 S.E. 2d 619]. The State is immune from suit unless and until it has expressly consented to be sued. It is for the General Assembly to determine when and under what circumstances the State may be sued. When statutory provision has been made for an action against the State, the procedure prescribed by statute must be followed, and the remedies thus afforded are exclusive. The right to sue the State is a conditional right, and the terms prescribed by the Legislature are conditions precedent to the institution of the action. *Kirkpatrick v. Currie, Comr. of Revenue,* 250 N.C. 213, 108 S.E. 2d 209; *Duke v. Shaw, Comr. of Revenue,* 247 N.C. 236, 100 S.E. 2d 506; *Insurance Co. v. Unemployment Compensation Commission, supra; Rotan v. State, supra* [195 N.C. 291, 141 S.E. 733]."

In *Teer Co. v. Highway Commission,* 265 N.C. 1, 143 S.E. 2d 247 (1965), Justice Bobbitt (now Chief Justice), speaking of G.S. 136-29 (a statute almost identical to G.S. 143-135.3), which

permits suits on highway construction claims against the State Highway Commission, said: "The quoted statute, which assumes a valid contract is subsisting, provides for recovery, 'under the said contract.' In our view, recovery, if any, 'under the said contract' must be based on the terms and provisions thereof." And the Court then continued: "Even so, recovery, if any, must be within the terms and framework of the provisions of the contract of July 8, 1958 and not otherwise."

[3] In the present case, the trial judge correctly found that there was no provision in the contracts for recovery of damages for delays or for losses by reason of the devaluation of the German mark. Under the provisions of G.S. 143-135.3, the plaintiff is only entitled to recover "such settlement as he claims to be entitled to under terms of his contract" and since plaintiff's claims as set out in the second and third counts of its complaint did not arise under the terms of its contracts, the court properly entered summary judgment on these two counts.

## DEFENDANT'S APPEAL

Defendant contends the trial court committed prejudicial error in failing to allow defendant's motion to dismiss. At the beginning of the trial, defendant moved to dismiss this action under Rule 12(b)(6) of the Rules of Civil Procedure on the ground that the plaintiff had not complied with the conditions of the contracts and the pertinent statutes so as to be entitled to bring this action. At the close of plaintiff's evidence, the defendant moved to dismiss for failure to establish a cause of action. At the close of all the evidence, defendant moved to dismiss under Rule 41(b) of the Rules of Civil Procedure. Each motion was denied, and defendant excepted.

Defendant contends that the four contracts involved in this case were not completed within the meaning of G.S. 143-135.3 so as to enable plaintiff to proceed with the filing of its claim before the Director of the Department of Administration. This contention is based first upon Section 29.00 of the Special Conditions of each contract, which is as follows:

"29.00 AS-BUILT DRAWINGS. As the work progresses, each Contractor shall keep a complete record of any and all variations between actual project installations and contract drawing and specification requirements. Upon com-

pletion of project one set of drawings shall be marked in red to show all such variations and these drawings shall be forwarded to Architect-Engineer."

It is also based on Section 1.08 of the Technical Specifications in Contract No. 3, which provides:

"1.08 RECORD DRAWINGS. Upon completion of the work the contractor shall furnish to the engineer original or reproducible tracings of a complete set of drawings and calculations of the facility, as built, and furnish in book form 8 copies of instructions for operation, maintenance and lists of spare parts. These books are to include all descriptive material, parts list, drawings covering all items of electrical equipment and mechanical units, and instructions prepared by the manufacturers covering the proper methods of adjusting, lubricating and otherwise maintaining each item."

[4] The trial court found as a fact that these drawings were not furnished and accepted by the defendant until on or about 1 March 1971. This claim was filed with the Director of the Department of Administration on 16 February 1970, over a year before the plantiff furnished the "as-built" drawings, and this action was instituted on 9 July 1970, some eight months before the plaintiff had completed a material part of its contract by furnishing these drawings. It is apparent that the plaintiff filed its claim with the Director of the Department of Administration and also instituted this action before it had completed these provisions of its contracts. The "as-built" drawings were very important to defendant. During the course of construction numerous changes were made in the contract drawings and specifications, and the amended drawings were necessary for future use in repairs or other changes. The court erred in not dismissing this action because of the failure of plaintiff to complete its contracts by the timely filing of these "as-built" drawings, as it was required to do by G.S. 143-135.3.

The next contention of the defendant presents an even more serious question. The Special Conditions of each contract provide:

"16.00 CONTRACTOR'S AFFIDAVIT. The final payment of retained amount due the Contractor on account of the contract shall not become due until the Contractor has furnished to

the Owner through the A-E an affidavit signed, sworn, and notarized to the effect that all payments for materials, services, or any other reason in connection with his contract have been satisfied and that no claims or liens exist against the Contractor in connection with this contract. In the event that the Contractor cannot obtain similar affidavits from subcontractors to protect the Contractor and the Owner from possible liens or claims against the subcontractor, the Contractor shall state in his affidavit that no claims or liens exist against any subcontractor to the best of his (the Contractor's) knowledge, and if any appear afterwards, the Contractor shall save the Owner harmless on account thereof."

The plaintiff has not furnished such affidavits, and the trial court, although holding that the failure to furnish affidavits was not so material as to prevent plaintiff from proceeding with this action, did hold that plaintiff would not be entitled to final payment under each of its contracts until such time as the affidavits were furnished. The final judgment provided that the plaintiff have and recover certain money of the defendant " . . . said award being contingent upon the furnishing by plaintiff to defendant of a contractor's affidavit for Contracts Nos. 1, 2, 3, and 7." Section 14.00 of the Special Conditions of each contract states:

"(c) Final payment will not be made until certificates of the A-E and such State Agencies having jurisdiction have been duly issued as required by State Laws. (G.S. 133-1.1)."

G.S. 133-1.1 provides that the Architect-Engineer must furnish to the owner a certificate that the contractor has fulfilled all obligations of the contract, and further provides:

"(f) Neither the designer nor the contractor involved shall receive his final payment until the required certificate of compliance shall have been received by the awarding authority."

G.S. 133-4 makes failure to comply with the provisions of this chapter a misdemeanor.

The Architect-Engineer has not and cannot furnish defendant a certificate in this case as required by G.S. 133-1.1 since

the contractor has failed to furnish the affidavits to the effect that all payments for materials, services, or any other reason in connection with these contracts have been satisfied and that no claims or liens exist against the contractor in connection with these contracts. Plaintiff is unable to furnish these affidavits due to the fact that Krupp International, one of its subcontractors under these contracts, claims plaintiff still owes it the sum of approximately $150,000. Defendant has been put on notice of this claim by Krupp International, and should defendant pay plaintiff the final amount due under the contracts before the claim between plaintiff and Krupp International is settled, Krupp International would have a claim against the defendant for the amount of that indebtedness. For the Architect-Engineer to furnish defendant a certificate that plaintiff has fulfilled all obligations under its contracts before the plaintiff has settled with Krupp International would be a violation of G.S. 133-4, and if defendant paid plaintiff before receiving the certificate of compliance from the Architect-Engineer, defendant would be violating G.S. 133-1.1. The plaintiff's failure to complete its obligation under the terms of its contracts prohibits the plaintiff from seeking the relief provided under G.S. 143-135.3.

"The rights of the contractor are fixed by the contract and by the law in force at the time of its execution, and, where the contract prescribes the procedure to be followed to obtain payment, it has been held that compliance therewith is a condition precedent to the enforcement of the liability of the state. There can be no recovery against the state on a contract not performed according to its terms." 81 C.J.S., States § 124a, pp. 1115-16.

It is stated in 43 Am. Jur., Public Works and Contracts § 71, p. 813:

"In the performance of a contract for public work differences frequently arise between the contractor and public authorities, and for the purpose of avoiding litigation or delay most such contracts contain stipulations which require the work to be done under the supervision of an architect, engineer, building superintendent, or other public officer or employee who is given authority to determine questions relating to the execution of the work; such stipulations usually restrict the making of payments to the

contractor except upon the designated officer's certificate that the work has been properly performed . . . . Under such provisions the procurance of the prescribed certificate is a condition precedent to the right of the contractor to be paid for his work and therefore to sue for money alleged due him, in the absence of any showing of fraud or mistake as ground for the refusal of payment . . . . "

See also 3A Corbin on Contracts § 650, p. 115; *Teer Co. v. Highway Commission, supra; Insurance Co. v. Gold, Commissioner of Insurance, supra.*

[5] Plaintiff must furnish the affidavits required by the contracts before it can file claim with the Director of the Department of Administration or file suit thereon. Since it has not done so, its contracts have not been completed as required by G.S. 143-135.3, and the action should be dismissed. The court erred in overruling defendant's motion to dismiss, and the judgment entered by Judge Clark for plaintiff must be reversed. For this reason, we do not deem it necessary to consider whether or not the judgment entered by Judge Clark was void as a conditional judgment, nor do we need to consider the other assignments of error brought forward by defendant.

The judgment for plaintiff is reversed without prejudice to plaintiff to file a new claim with the Director of the Department of Administration within one year upon compliance with the requirements of G.S. 143-135.3 and in accordance with this opinion.

On plaintiff's appeal: Affirmed.

On defendant's appeal: Reversed.