FRED GUTHRIE, JR. AND KATHY GUTHRIE v. NORTH CAROLINA STATE PORTS AUTHORITY

No. 813SC409

(Filed 16 February 1982)

**State § 5— State Ports Authority—agency of State**
    The superior court judge erred in failing to dismiss plaintiff's claim against defendant as the defendant, State Ports Authority, is an agency of the State of North Carolina and, as such, actions in tort against it must be instituted pursuant to the North Carolina Tort Claims Act.

APPEAL by defendant from *Brown, Judge.* Order entered 12 March 1981 in Superior Court, CRAVEN County. Heard in the Court of Appeals 8 December 1981.

Plaintiff Fred Guthrie, Jr. seeks damages for injuries sustained by him while working as a forklift operator in a warehouse owned and operated by defendant. Plaintiff Kathy Guthrie seeks damages for loss of consortium. These causes of action were brought in superior court on 7 November 1980.

On 2 December 1980, defendant filed motions to dismiss these actions under G.S. 1A-1, Rules 12(b)(1), 12(b)(2), and 12(b)(6), for lack of jurisdiction over the subject matter, lack of jurisdiction over the person, and failure to state a claim upon which relief can be granted, respectively. The grounds for defendant's Rule 12(b)(1) and Rule 12(b)(2) motion were that it is an agency of the State of North Carolina, and that as such, actions in tort against it must be instituted pursuant to the North Carolina Tort Claims Act [hereinafter referred to as the Act].

Following detailed findings of fact, the trial judge concluded, in part, that

1. The parties herein are properly before the court and the court has jurisdiction over this cause.

. . . .

2. The defendant is not entitled to claim the defense of sovereign immunity in this cause.

. . . .

3. The North Carolina State Tort Claims Act, G.S. 143-291, et seq. is not applicable to the claim alleged herein by the plaintiffs.

Defendant's motions to dismiss therefore were denied. Defendant appeals from this order.

*Bennett, McConkey & Thompson, by Thomas S. Bennett and James W. Thompson III, for plaintiff-appellees.*

*Stith & Stith, by F. Blackwell Stith, for defendant-appellant.*

HILL, Judge.

This appeal arises from the trial judge's denial of defendant's motions to dismiss. "Ordinarily, there is no right of appeal from the refusal of a motion to dismiss. The refusal to dismiss the action generally will not seriously impair any right of defendant that cannot be corrected upon appeal from final judgment." *Godley Auction Co. v. Myers,* 40 N.C. App. 570, 573, 253 S.E. 2d 362, 364 (1979). Although appeal from an order denying motions to dismiss is fragmentary, our cases allow "the appellate courts [to] entertain an appeal from [such an order] in some cases and *elect*

to review some cases on their merits . . .." *Shaver v. N. C. Monroe Construction Co.,* 56 N.C. App. 68, 69, 283 S.E. 2d 526, 527 (1981) (emphasis original). Thus, because of the importance of the question presented and our ultimate disposition, we elect to review this case on its merits.

The sole question for our review is whether defendant is an agency of the State of North Carolina under the Act, G.S. 143-291, such that tort claims against it must be instituted exclusively in the Industrial Commission. For the following reasons, we hold that defendant is an agency of the State under the Act, plaintiffs' claims are applicable to the Act, and the trial judge's conclusions of law to the contrary are not supported by his findings of fact.

The Act states that "[t]he North Carolina Industrial Commission is hereby constituted a court for the purpose of hearing and passing upon tort claims against the State Board of Education, the Department of Transportation, and all other departments, institutions and *agencies of the State.*" G.S. 143-291 (emphasis added). Generally, our cases have not been very helpful in construing the emphasized portion of the statute, except to say that "[t]he Tort Claims Act embraces claims only against State agencies." *Givens v. Sellars,* 273 N.C. 44, 50, 159 S.E. 2d 530, 535 (1968). *See also Wirth v. Bracey,* 258 N.C. 505, 128 S.E. 2d 810 (1963). However, in *Turner v. Gastonia City Board of Education,* 250 N.C. 456, 463, 109 S.E. 2d 211, 216 (1959), our Supreme Court stated the following:

> Under the ordinary rules of construction, "departments, institutions, and agencies of the State." must be interpreted in connection with the preceding designation, "State Board of Education and State Highway & Public Works Commission." Where words of general enumeration follow those of specific classification, the general words will be interpreted to fall within the same category as those previously desginated. The maxim *ejusdem generis* applies especially to the construction of legislative enactments. It is founded upon the obvious reason that if the legislative body had intended the general words to be used in their unrestricted sense the specific words would have been omitted.

In this light, we will compare the organization and powers of the State Board of Education and the Department of Transportation

with defendant to determine whether the three are *ejusdem generis*.

"The State Board of Education shall consist of the Lieutenant Governor, the State Treasurer, and 11 members appointed by the Governor, subject to confirmation by the General Assembly in joint session." G.S. 115C-10. The Governor may fill vacancies on the Board for unexpired terms without legislative confirmation. *Id.* G.S. 115C-12 vests in the State Board of Education "[t]he general supervision and administration of the free public school system . . .." For its financial powers, "[t]he Board shall have general supervision and administration of the educational funds provided by the State and federal governments," excepting certain local funds. G.S. 115C-408. Specifically, the State Board of Education has the power or duty, *inter alia,* to alter the boundaries of certain administrative units, to appoint a controller to manage the fiscal affairs of the public school fund, to apportion State and federal school funds, to provide for certain programs or projects, to purchase liability insurance, and to provide certain school personnel functions. *See generally* G.S. 115C-12. The superintendent of public instruction, elected to a four year term by the qualified voters of the State, is the chief administrative officer of the State Board of Education. G.S. 115C-18 and -19.

"The general purpose of the Department of Transportation is to provide for the necessary planning, construction, maintenance, and operation of an integrated statewide transportation system for the economical and safe transportation of people and goods as provided for by law." G.S. 143B-346. The Board of Transportation, however, is the department's governing body analogous to the State Board of Education. "The Board of Transportation shall have 21 members appointed by the Governor. . . . The Governor shall have the authority to remove for cause sufficient to himself, any member appointed by the Governor." G.S. 143B-350(c). Two additional members are appointed, one from the membership of the Senate by the Lieutenant Governor, and one from the membership of the House of Representatives by the Speaker of the House of Representatives. G.S. 143B-350(d). "Vacancies in each office shall be filled by the incumbent of the office making the appointment to the Board." *Id.* The Secretary of Transportation is an *ex officio* member and chairman of the Board of Transportation. G.S. 143B-350(b). G.S. 143B-350(e) allows the Board of

Transportation to meet "at any place in the State" as it may pro-
vide. "The Board shall carry out its duties consistent with the
needs of the State as a whole and it shall not sacrifice the general
statewide interest to the purely local desires of any particular
area." G.S. 143B-350(a). Specifically, the Board of Transportation
has the powers and duties, *inter alia,* to "formulate policies and
priorities for all modes of transportation under the Department of
Transportation," to ascertain transportation needs, to schedule
transportation improvement projects, to advise the Secretary of
Transportation, "[t]o allocate all highway construction and
maintenance funds appropriated by the General Assembly as well
as federal-aid funds which may be available," to review and ap-
prove highway construction projects and programs, to award all
highway construction contracts, and to authorize the acquisition
of rights-of-way for highway improvement projects. *See generally*
G.S. 143B-350(f).

The North Carolina State Ports Authority, defendant herein,
was created by G.S. 143B-452.

> It shall be governed by a board composed of nine members
> and hereby designated as the authority. . . . The Governor
> shall appoint seven members to the Authority, the Lieuten-
> ant Governor shall appoint one member and the Speaker of
> the House of Representatives shall appoint one member.
>
> . . . The members of the Authority appointed by the
> Governor shall be selected from the state-at-large and insofar
> as practicable shall represent each section of the State in all
> of the business, agriculture, and industrial interests of the
> State.

*Id.* The Governor, the Lieutenant Governor, and the Speaker of
the House of Representatives may fill vacancies created by their
own appointments. Further, the North Carolina State Ports
Authority may meet "at any place within the State" as it may
provide. *Id.*

> *Through the Authority hereinbefore created, the State of
> North Carolina may* engage in promoting, developing, con-
> structing, equipping, maintaining and operating the harbors
> and seaports within the State, or within the jurisdiction of
> the State, and works of internal improvements incident

> thereto, including the acquisition or construction, mainte-
> nance and operation at such seaports or harbors of water-
> craft and highway and bridges thereon or essential for the
> proper operation thereof. *Said Authority is created as an in-*
> *strumentality of the State of North Carolina for the ac-*
> *complishment of [its] . . . purposes . . ..*

G.S. 143B-453 (emphasis added). To carry out its purposes, the
North Carolina State Ports Authority has the powers of a body
corporate—"including the power to sue and be sued [and] to make
contracts . . .." G.S. 143B-454(1). It also has the power to acquire
or dispose of real or personal property, to maintain structures
useful in the aid of commerce, to establish an office with person-
nel as the Secretary of Commerce deems necessary, to pay for its
formation and organization, and to apply for and accept loans
from the State or federal government or other sources,

> provided, however, that no indebtedness of any kind incurred
> or created by the Authority shall constitute an indebtedness
> of the State of North Carolina, or any political subdivisions
> thereof, and no such indebtedness shall involve or be secured
> by the faith, credit or taxing power of the State of North
> Carolina, or any political subdivision thereof: Provided,
> however, at no time may the total outstanding indebtedness
> of the Authority, excluding bond indebtedness exceed a total
> of five hundred thousand dollars ($500,000) without approval
> of the Advisory Budget Commission . . ..

G.S. 143B-454(9). *See generally* G.S. 143B-454. In addition, any ac-
quisition or disposition of real property by the North Carolina
State Ports Authority, as noted above, is subject to the prior
review and approval by the Governor and Council of State. G.S.
143B-455. Although the North Carolina State Ports Authority is
empowered to issue negotiable revenue bonds which are not
deemed to constitute a debt of the State, G.S. 143B-456(h), such
bonds can be issued only with the approval of the Advisory
Budget Commission. G.S. 143B-456(b).

The foregoing comparison of the organization and powers of
the State Board of Education and the Department of Transporta-
tion, explicitly under the Act, with defendant yields similarities in
three major areas. First, in each instance, the members are ap-
pointed by the Governor and other government officials who also

have the power to fill vacancies in the memberships. *See* G.S. 115C-10; 143B-350(c) and (d); 143B-452. Second, although each entity has certain independent fiscal responsibilities, the ultimate control over funding lies with the State, whether it be the General Assembly or the Advisory Budget Commission. *See* G.S. 115C-408; 143B-350(f)(7); 143B-454(9). Third, each entity is statutorily authorized to conduct its specific functions on behalf of the State of North Carolina. *See* G.S. 115C-12; 143B-350(a). Significantly, G.S. 143B-453, quoted *supra*, states that defendant is an "instrumentality of the State."

Even though its act of creation has the effect of rendering defendant "a substantially independent and autonomous public or quasi-municipal corporation," as plaintiffs state, neither this description nor defendant's "proprietary function" erase its substantial ties to the State of North Carolina as indicated above. *See generally The News & Observer Publishing Co. v. Wake County Hospital Systems, Inc.*, 55 N.C. App. 1, 284 S.E. 2d 542 (1981). Thus, since the State Board of Education, the Department of Transportation, and defendant have similar ties to the State through their organization and powers, we find that they are *ejusdem generis*.

Defendant is an agency of the State of North Carolina under the Act; its liability, if any, must be determined by the Industrial Commission. The order of the trial judge denying defendant's motions to dismiss is

Reversed.

Judges VAUGHN and WEBB concur in result.

Judges VAUGHN and WEBB concurring.

We concur in the result reached in this case, but we do not agree with all the reasons advanced therefor. We believe our Supreme Court has held that the North Carolina State Ports Authority is a state agency. *See Nat Harrison Associates, Inc. v. State Ports Authority*, 280 N.C. 251, 185 S.E. 2d 793 (1972). We believe we are bound by this holding. We vote to reverse for this reason.