LINDA CADE WATTS, KIM WATTS, AND GEORGE WATTS v. CUMBERLAND COUNTY HOSPITAL SYSTEM, INC.; DR. JAMES ASKINS; DR. RALPH MORESS; NORTH CAROLINA BAPTIST HOSPITALS, INC.; DR. VICTOR KERANEN; DR. W. C. MILLER; DR. MENNO PENNICK; DR. EBAN ALEXANDER, JR.; DR. JAMES TOOLE; AND DAN HALL

No. 8412SC693

(Filed 4 June 1985)

Fraud § 12; Physicians, Surgeons and Allied Professions § 16.1— health care providers—fraudulent concealment—summary judgment

In an action against seven doctors for fraudulent concealment of the true nature and extent of plaintiff's injuries with the intention of preventing her from discovering that fractures sustained in her neck and back in a 1974 automobile accident had been overlooked at the initial examination, plaintiff's forecast of evidence was insufficient to establish triable issues of fraud against five doctors where the evidence was uncontroverted that, at the time such doctors were involved with the care of plaintiff, no doctor had rendered an opinion or diagnosis that plaintiff had sustained fractures of her neck or spine in 1974, since such doctors could not have fraudulently concealed information from plaintiff that was unknown to them. However, plaintiff's forecast of evidence was sufficient to establish material issues of fact as to whether two other doctors knew of plaintiff's true condition after another doctor informed plaintiff that fractures showed up on x-rays taken at the time of her accident and whether they subsequently made false representations or concealments intended to conceal from plaintiff their knowledge of her true condition.

Judge WELLS dissenting in part and concurring in part.

APPEAL by plaintiff, Linda Watts, from *Johnson, Judge.* Order entered 14 October 1983 in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 13 February 1985.

*Hedahl & Radtke, by Joan E. Hedahl, for plaintiff appellant.*

*Patterson, Dilthey, Clay, Cranfill, Sumner & Hartzog, by Robert M. Clay, Alene M. Mercer, David D. Ward, and H. Lee Evans, Jr., for defendant appellees Askins, Moress, North Carolina Baptist Hospitals, Inc., Keranen, Pennick and Alexander.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, by James D. Blount, Jr. and Jodee Sparkman King, for defendant appellees Miller and Toole.*

BECTON, Judge.

I

This appeal is the companion case to No. 8412SC692, filed to-day. Both appeals arise from an action in which plaintiffs seek to recover damages from defendant health care providers for malpractice and fraudulent concealment which allegedly occurred in the course of defendants' treatment of plaintiff, Linda Watts, following a 7 June 1974 automobile accident in which she was injured. All defendants except Cumberland County Hospital System, Inc., moved for, and were granted, summary judgment. The plaintiffs appealed. However, as noted in the companion case, plaintiffs George Watts and Kim Watts have abandoned their appeals.

The appellee in the companion appeal is defendant Dan Hall, a marital and family therapist, who counseled Linda Watts subsequent to her accident. The appellees in the instant appeal are defendant physicians and defendant North Carolina Baptist Hospitals. In the companion case, one of plaintiff's several contentions was that the trial court erred in granting summary judgment for Hall on plaintiff's fraudulent concealment claim. This Court found error, and reversed.

The single question presented on the instant appeal is whether summary judgment was properly granted on the fraudulent concealment claim against the other appellees. For the reasons stated below, we affirm summary judgment as to North Carolina Baptist Hospitals, Miller, Askins, Moress, Keranen and Alexander; and as to Pennick and Toole, we reverse.

II

We address separately the appeal taken against defendant North Carolina Baptist Hospitals. Plaintiff's complaint sets forth a claim against Baptist Hospitals based on medical negligence only. Summary judgment was allowed on that ground, and also on the ground that the statute of limitations had expired. No assignment of error pertains to Baptist Hospitals; plaintiff's brief is devoted exclusively to the issue of fraudulent concealment. As appellate review is confined to questions raised by the assignments of error and discussed in a party's brief, North Carolina Rules of Appellate Procedure, Rules 10(a); 28(a), the issue of whether judg-

ment was correctly entered against Baptist Hospitals was not properly preserved for appellate review. We therefore affirm as to Baptist Hospitals.

## III

We now address the propriety of summarily adjudicating this action as to each of the defendant doctors. First, we examine the Complaint for the purpose of summarizing the factual allegations against each physician upon which both the negligence and fraudulent concealment claims are founded.

*Dr. Miller*: Plaintiff alleges that she was x-rayed on the date of the accident by Dr. Miller, a radiologist at Cumberland County Hospital System, Inc.

*Dr. Keranen*: Plaintiff alleges that Dr. Keranen was the neurosurgeon on call on 4 July 1974, the date on which she went to the emergency room of Cape Fear Valley Hospital, that she was admitted the following day, that Dr. Keranen was, to her knowledge, her treating physician during this 13-day hospitalization, and that during her stay, Dr. Keranen transferred her case to Dr. Moress, a psychiatrist, without her knowledge.

*Dr. Moress*: Plaintiff alleges that she spoke to Dr. Moress twice for a total of five minutes around the time of her 18 July 1974 discharge from Cape Fear Valley Hospital; she alleges she was informed that Dr. Moress was the physician who discharged her.

*Dr. Askins*: Plaintiff alleges that when she was released from the Cumberland County Hospital System, Inc. outpatient services on 7 June 1974, she was told to contact Askins, an orthopedic surgeon, if she continued to have difficulty, that she attempted to contact him before her July 1974 hospitalization, but was informed that he was out of town, that she in fact saw Dr. Askins "several times" after 18 July 1974, and that she "was treated by him for a sprain and was given pain medication."

*Dr. Alexander*: Plaintiff alleges that she was treated by Dr. Alexander, a neurosurgeon, at North Carolina Baptist Hospitals, Inc., in April 1976, when she "sought further diagnosis and treatment," and that at this time a myelogram [an x-ray of the spinal cord] and EMG of her hand and arm were taken.

*Dr. Pennick*: Plaintiff alleges that she was referred to Dr. Pennick, a neurosurgeon, in June 1977, and that he admitted her to Cape Fear Valley Hospital; that during her two-week hospitalization, he performed carpal tunnel surgery on her hand, and also performed and/or ordered three discograms [an x-ray of an intervertebral disc], one myelogram, and x-rays of her back and neck; that she continued to see Dr. Pennick during the majority of 1979; that the only prescribed treatment was pain medication; that she took reports made by Dr. C. Gene Coin, indicating that she was suffering from a broken neck and spine, to Dr. Pennick in 1979; that she contacted Dr. Pennick in June 1981, was unsuccessful in her attempts to see him, and finally received a letter from him dated 29 July 1981, detailing her medical history. Plaintiff also alleges that in June 1981, Dan Hall spoke to Dr. Pennick, and that they exchanged letters, discussed her affairs, and that Dr. Pennick disclosed plaintiff's medical records to Dan Hall.

*Dr. Toole*: Plaintiff alleges that she was admitted to Baptist Hospital by Dr. Toole, a neurologist, on 27 May 1981; that x-rays and an EMG were taken, a myelogram was suggested by Dr. Toole and refused by plaintiff; that Dr. Toole suggested surgery but later reconsidered. Plaintiff alleges that on 5 June 1981, Dr. Toole informed her that, among other ailments, she had arachnoiditis [thickening and adhesions in the brain or spinal cord, resulting from other disease processes, or trauma], that the arachnoiditis was causing deterioration of her lower extremities, that this was the "first detailed diagnosis of her condition," but that Dr. Toole "did not disclose the full extent of her injuries in that he did not detail the lumbar break." She also alleges later in her complaint that Dr. Toole disclosed her medical records to Dan Hall.

Following from these specific factual allegations are conclusory allegations of negligence and fraudulent concealment. The allegations of negligence revolve around the failure of defendant doctors to observe, diagnose, and treat plaintiff's injuries; the allegations of fraudulent concealment are that the medical defendants knew or should have known of plaintiff's true condition, that they made false representations of material facts and opinions concerning the nature and extent of her injuries, with the intent of preventing plaintiff from discovering that the fracture had been overlooked at the initial examination, which misrepresenta-

tions were directly relied upon by plaintiff, with the result that she never received proper treatment and developed arachnoiditis and attendant complications.

The sole issue for our resolution is whether summary judgment was properly granted in favor of these doctors on the fraudulent concealment claim. Summary judgment is granted only when the movant meets its burden of showing that there is no genuine issue as to any material fact and it is entitled to judgment as a matter of law. *Zimmerman v. Hogg & Allen*, 286 N.C. 24, 209 S.E. 2d 795 (1974). When the pleadings or proof discloses that no cause of action exists, a summary judgment may be granted. *Nat Harrison Assoc., Inc. v. Ports Authority*, 280 N.C. 251, 185 S.E. 2d 793, *reh'g denied*, 281 N.C. 317 (1972). *Accord Rockingham Square Shopping Center, Inc. v. Town of Madison*, 45 N.C. App. 249, 262 S.E. 2d 705 (1980) (when plaintiff's complaint disclosed no cause of action, summary judgment for defendant proper).

As noted in the companion case, the essential elements of actual fraud are: "(1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party," *Terry v. Terry*, 302 N.C. 77, 83, 273 S.E. 2d 674, 677 (1981), and, where there is a duty to speak, the concealment of a material fact is equivalent to a fraudulent misrepresentation. *Griffin v. Wheeler-Leonard & Co.*, 290 N.C. 185, 225 S.E. 2d 557 (1976). Furthermore, North Carolina Rules of Civil Procedure 9(b) requires that fraud be pleaded with particularity, and it is well-settled that in order to state a cause of action for fraud, facts must be alleged which, if true, would constitute fraud, it not being sufficient to allege the elements of fraud in general terms. *Eastern Steel Products Corp. v. Chestnutt*, 252 N.C. 269, 113 S.E. 2d 587 (1960).

The core of plaintiff's fraudulent concealment claim is that defendant doctors made false representations that were intended to prevent plaintiff from discovering that the fracture had been overlooked at the initial examination, and which ultimately concealed from plaintiff the true nature and extent of her injuries. With the exception of Drs. Pennick and Toole, the factual allegations against each of the defendant doctors, which we summarized in their entirety, reveal that plaintiff has utterly failed to allege

facts which, if proven, would establish fraud. This is so even though plaintiff's Complaint is 97 paragraphs long.

Nor do the materials produced during discovery, which, in addition to answers and affidavits from the defendants, consist principally of plaintiff's medical records, elevate this case to one of fraudulent concealment. The evidentiary materials merely tend to generally confirm and otherwise supplement plaintiff's allegations that she was treated by the doctors named in her Complaint, receiving the treatment she claims to have received. The single document in all of plaintiff's voluminous medical records indicating the possibility of an initial misdiagnosis is a 20 May 1979 report on a CAT scan of plaintiff's lumbar region, wherein Dr. C. Gene Coin states his "belief that certain wedge-shaped defects . . . represent residual changes from previous vertical fractures of . . . vertebral bodies." Plaintiff asserts in her answers to interrogatories that Dr. Coin subsequently reviewed x-rays taken at the time of her accident and informed her that the fractures showed up on these original x-rays.

Dr. Coin's report at best supports a conclusion that at the time of the accident plaintiff sustained fractures, and that these fractures were somehow overlooked. The presence of Dr. Coin's report would, in our opinion, have enabled plaintiff to survive defendants' motion for summary judgment on the merits of a medical malpractice claim. This question is not, however, before us. The trial court found that plaintiff's medical malpractice claim was barred by the applicable statute of limitations, and plaintiff does not challenge that ruling. Thus, this appeal does not deal with a cause of action sounding in negligence; it deals with a cause of action sounding in fraud. To prevail, the plaintiff must prove that false representations or concealments were made with knowledge of the truth or with reckless indifference thereto.

The allegations and proof as to Drs. Askins, Moress, Keranen, Miller and Alexander show only that at a point after they had completed treating the plaintiff, another doctor rendered an opinion different from theirs. There is no allegation or indication that these five doctors ever reviewed the original x-rays or consulted with one another. The evidence is uncontroverted that at the time Drs. Askins, Moress, Keranen, Miller and Alexander were involved with the care of plaintiff, no doctor had rendered

an opinion or diagnosis that plaintiff had sustained fractures of her neck and/or spine in 1974. We fail to see how these doctors could have fraudulently concealed information from the plaintiff that was unknown to them. The forecast of evidence leads inevitably to the conclusion that the plaintiff continues to rest her case as to these five doctors exclusively on wholly unsupported conclusory allegations of fraudulent concealment. We conclude that no triable issue of fact exists on plaintiff's claim of fraud, and as to Drs. Askins, Moress, Keranen, Miller and Alexander, the summary judgment must be affirmed.

The allegations and proof as to Drs. Pennick and Toole are distinguishable from those made and adduced against the other defendant doctors, and enable plaintiff to survive the summary judgment motions of the former. As to Dr. Pennick, plaintiff alleges that she was treated by him over a long period of time, that she made him aware of Dr. Coin's diagnosis, and that Pennick consulted with Dan Hall concerning her condition. As to Dr. Toole, plaintiff similarly alleges, and the medical records support, that Toole consulted with Dan Hall, and also that plaintiff had a full neurological workup under his care. Dr. Toole's discharge summary even indicates that he reviewed plaintiff's previous x-rays, although without specifying which ones. The allegations and proof support that Dr. Toole diagnosed plaintiff's arachnoiditis, but without sufficiently detailing its relation to plaintiff's alleged original fractures. In our opinion, plaintiff's far more substantial allegations and attendant proof raise material issues of fact as to whether Drs. Toole and Pennick knew of plaintiff's true condition, namely, that she had sustained fractures in her 1974 automobile accident, and subsequently made false representations or concealments intended to conceal from plaintiff their knowledge of her true condition. As to Drs. Toole and Pennick, then, summary judgment must be reversed.

IV

In conclusion, summary judgment for defendant North Carolina Baptist Hospitals and defendant doctors Miller, Askins, Moress, Keranen and Alexander is affirmed; summary judgment for defendant doctors Pennick and Toole is reversed. We summarize the effect of this decision, and that of the companion case, as follows:

Plaintiff, Linda Watts, has:

1. A cause of action based on negligence against defendant Cumberland County Hospital System, Inc. (This is because this defendant never moved for summary judgment.)

2. A cause of action based on fraudulent concealment against defendant doctors Pennick and Toole.

3. A cause of action on all claims against defendant Dan Hall.

4. No cause of action on any claim against defendant doctors Miller, Askins, Moress, Keranen, and Alexander, and defendant North Carolina Baptist Hospitals.

Plaintiffs George Watts and Kim Watts have:

1. A cause of action based on negligence against defendant Cumberland County Hospital System, Inc.

2. No cause of action on any claim against any other defendant.

Affirmed in part; reversed in part.

Judge WELLS concurs in part and dissents in part.

Judge WHICHARD concurs.

Judge WELLS dissenting in part and concurring in part.

The majority opinion recognizes plaintiff's claim for fraudulent concealment, based on plaintiff's allegations that defendant physicians made false representations of material facts which served to conceal from plaintiff the "true nature and extent" of her injuries; that such representations were made with the intention of preventing plaintiff from discovering that plaintiff's fracture had been "overlooked" at plaintiff's initial examination; and that such misrepresentations prevented plaintiff from obtaining necessary treatment.

In my opinion, plaintiff's allegations state a claim for malpractice, and I would not recognize a claim for fraud based on those allegations. I, therefore, dissent from that part of the ma-

jority opinion which recognizes and allows such a claim to go to trial.

I concur in the remainder of the majority opinion.