LINDA CADE WATTS, KIM WATTS, AND GEORGE WATTS v. CUMBERLAND
COUNTY HOSPITAL SYSTEM, INC.; DR. JAMES ASKINS; DR. RALPH
MORESS; NORTH CAROLINA BAPTIST HOSPITALS, INC.; DR. VICTOR
KERANEN; DR. W. C. MILLER; DR. MENNO PENNICK; DR. EBAN ALEX-
ANDER, JR.; DR. JAMES TOOLE, AND DAN HALL

No. 8412SC692

(Filed 4 June 1985)

1. **Appeal and Error § 24— assignments of error—necessity for discussion in brief**

Appellate review is limited to questions raised by assignments of error
and discussed in a party's brief, App. Rule 28(a), and any other questions
raised by the assignments of error are deemed abandoned.

2. **Rules of Civil Procedure § 56.2— motion for summary judgment—burden of
proof**

A defendant who moves for summary judgment assumes the burden of
positively and clearly showing that there is no genuine issue as to any
material fact and that he or she is entitled to judgment as a matter of law. A
defendant may meet this burden by (1) proving that an essential element of
plaintiff's claim is nonexistent, or (2) showing through discovery that plaintiff
cannot produce evidence to support an essential element of his or her claim, or
(3) showing that plaintiff cannot surmount an affirmative defense which would
bar the claim.

3. **Rules of Civil Procedure § 56.2— motion for summary judgment—burden of
proof**

If the defendant moving for summary judgment fails to meet the initial
burden of proof, the motion must fail even though the plaintiff does not submit
any affidavits or other supporting materials in opposition to the motion. Once
the defendant satisfies his or her burden of proof, however, the burden shifts
to the plaintiff to present a forecast of evidence which shows that a genuine

1

Watts v. Cumberland County Hosp. System

issue of fact exists, or to provide an excuse for not so doing, and if the plaintiff does not respond as required, summary judgment, if appropriate, should be entered for defendant.

**4. Appeal and Error § 2— contention not raised in trial court—no appellate review**

The validity of plaintiffs' amended complaint was not before the appellate court where defendant did not object to the amended complaint or raise the issue of its validity before the trial court, defendant indicated his consent to the amended complaint by filing an answer to it, by responding to the allegations within it, and by submitting materials in support of his motion for summary judgment, and the parties and the court treated the amendment of the complaint as proper.

**5. Physicians, Surgeons and Allied Professions § 11— marital and family therapists—furnishing or failure to furnish professional services—medical malpractice action**

Certified marital and family therapists are health care providers as defined in G.S. 90-21.11, and any action for damages for personal injury or death arising out of their furnishing or failure to furnish professional services should be characterized as a medical malpractice action.

**6. Physicians, Surgeons and Allied Professions § 11— unauthorized disclosure of patient's confidences—medical malpractice**

A health care provider's unauthorized disclosure of a patient's confidences constitutes medical malpractice.

**7. Physicians, Surgeons and Allied Professions § 11— marital and family therapists—disclosure of confidences—statement of claim for relief**

Plaintiff's complaint was sufficient to state a claim for relief against a marital and family therapist for medical malpractice based upon unauthorized disclosure of confidential information about plaintiff patient.

**8. Physicians, Surgeons and Allied Professions § 16.1— medical malpractice—disclosure of patient's confidences—insufficient affidavit for summary judgment**

In an action against a marital and family therapist for medical malpractice based upon unauthorized disclosure of confidential information about plaintiff, defendant's affidavit in support of his motion for summary judgment showing only that he did in fact communicate with at least two of plaintiff's doctors and suggesting that those communications were justified was insufficient to satisfy the burden placed on a defendant moving for summary judgment.

**9. Physicians, Surgeons and Allied Professions § 13— malpractice action against marital and family therapist—statute of limitations**

A claim against a marital and family therapist for medical malpractice based upon unauthorized disclosure of confidential information was governed by the statute of limitations set forth in G.S. 1-15(c) rather than that set forth in G.S. 1-52. Where the last act giving rise to plaintiff's cause of action was defendant's unauthorized discussion with a doctor in July 1981, plaintiff's cause of action accrued at the time of that discussion, and it was not barred by the

statute of limitations where it was instituted within three years after July 1981.

**10. Physicians, Surgeons and Allied Professions § 15.1— medical malpractice— establishing applicable standard of care**

The applicable standard of care for a health care provider must be established by other practitioners in the particular field of practice or by other expert witnesses equally familiar with and competent to testify regarding that limited field of practice.

**11. Physicians, Surgeons and Allied Professions § 15.2— standard of care for marital and family therapist—competency of witness**

The trial court acted under a misapprehension of law in concluding that a witness was not qualified to testify about the relevant standard of care for a marital and family therapist in Fayetteville simply because he was not certified as a marital and family therapist. The court should have determined the witness's qualification as an expert on the standard of care applicable to defendant marital and family therapist by ascertaining whether, based on his education and experience, he had adequate knowledge of the standards of practice among pastoral, marital and family therapists in Fayetteville during the applicable period of time to be of help to the jury.

**12. Physicians, Surgeons and Allied Professions § 15.2— standard of care for marital and family therapist—competency of witness**

A witness was qualified to testify about the standard of care for a marital and family therapist in Fayetteville from 1974 until 1981 and defendant's deviation from that standard where the witness stated that he has been a Catholic priest since 1971; he has master degrees in philosophy and divinity; he studied psychology at the University of Detroit in 1967 and 1968; he received almost one year's academic and intern training in counseling and psychotherapy at a state hospital in Pennsylvania for which he received a diploma in those subjects; while working as a priest from 1971 to 1978 he functioned as a pastoral, family and marital counselor; he began law school in 1978 and is now a practicing attorney; and he had frequent dealings with other counselors, psychologists, and psychiatrists practicing in the Fayetteville area during the relevant time period and continues to have periodic contact with those persons. Therefore, the trial court should have considered the witness's affidavit in weighing the sufficiency of plaintiff's forecast of evidence in an action based on the alleged negligence of defendant marital and family therapist in furnishing professional services to plaintiff, and plaintiff's forecast of evidence was sufficient to establish a genuine issue of material fact as to defendant's negligence when the affidavit is considered.

**13. Fraud § 1— elements of fraud**

The essential elements of actionable fraud are: (1) false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party.

**14. Fraud § 9— pleading fraud**

The G.S. 1A-1, Rule 9(b) requirement that in all averments of fraud the circumstances constituting fraud must be stated with particularity is met by alleging time, place, and content of the fraudulent misrepresentation, identity of the person making the misrepresentation, and what was obtained as a result of the fraudulent acts or representations.

**15. Fraud § 9; Physicians, Surgeons and Allied Professions § 11— marital and family therapist—fraudulent concealment—sufficiency of complaint**

The allegations in plaintiff's amended complaint were sufficient to satisfy the particularity requirement of G.S. 1A-1, Rule 9(b) and to state a claim for relief against defendant family and marital therapist for fraudulent concealment in failing to tell her that her pain was caused by physical injuries she received in an automobile accident rather than by her psychological state.

**16. Fraud § 12; Physicians, Surgeons and Allied Professions § 17— marital and family therapist—fraudulent concealment—genuine issue of material fact**

Defendant marital and family therapist, who moved for summary judgment in plaintiff's action for fraudulent concealment in failing to inform plaintiff that her pain was caused by physical injuries she received in an automobile accident rather than by her psychological state, failed to meet his burden of clearly showing that there is no genuine issue of material fact with respect to plaintiff's claim.

**17. Appeal and Error § 42— report not offered in trial court—appendix to brief— no consideration by appellate court**

A medical report included in an appendix to plaintiff's brief will not be considered by the appellate court in determining a summary judgment issue where there is no indication in the record that the report was offered at the summary judgment hearing or considered by the court in ruling on the motion for summary judgment.

**18. Limitation of Actions § 8.2— fraudulent concealment—statute of limitations**

Plaintiff's claim against defendant marital and family therapist for fraudulent concealment was not barred by the statute of limitations of G.S. 1-52(9) where plaintiff did not discover that defendant was concealing the alleged true nature of her condition until after 1 June 1979 and plaintiff instituted her action on 1 June 1982. Whether plaintiff in the exercise of reasonable care and due diligence should have discovered the fraud prior to 1 June 1979 is a question of fact for the jury.

Judge WELLS concurring in part and dissenting in part.

APPEAL by plaintiffs from *Bowen, Wiley F., Judge.* Judgment entered 28 November 1983 in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 13 February 1985.

Plaintiffs seek to recover damages from defendant health care providers for malpractice and fraudulent concealment which

allegedly occurred in the course of defendants' treatment of plaintiff Linda Watts. Plaintiffs alleged: that Linda Watts fractured her spine in an automobile accident in June 1974; that subsequently she received medical and other professional care from defendants; that the defendant physicians and hospitals negligently failed to discover that her spine was fractured; and that defendants fraudulently concealed the true nature and extent of her injuries.

The present appeal concerns plaintiffs' claims against Dan Hall, a marital and family therapist who counseled Linda Watts for several years after her automobile accident. Plaintiffs asserted claims against Hall based on negligence, breach of fiduciary duty, and fraudulent concealment. Plaintiff husband also seeks to recover for loss of consortium and emotional distress. Plaintiff daughter seeks to recover for loss of her mother's services and emotional distress.

Hall moved for summary judgment on the grounds that the complaint fails to state a claim against him upon which relief may be granted and that the claims are barred by the statute of limitations in G.S. 1-52. Based on its examination of the materials submitted in support of and in opposition to the motion, the court concluded that there is no genuine issue of material fact between plaintiffs and Hall and allowed the motion. From summary judgment for Hall as to all claims asserted against him, plaintiffs appeal.

*Hedahl and Radtke, by Joan E. Hedahl, for plaintiff appellants.*

*Nance, Collier, Herndon and Wheless, by James R. Nance, Sr., for defendant appellee.*

WHICHARD, Judge.

I.

[1] The only question argued in plaintiffs' brief is whether the court erred in granting summary judgment for Hall on the claims asserted by Linda Watts. Appellate review is limited to questions raised by assignments of error and discussed in a party's brief. N.C. R. App. P. 28(a). Any other questions raised by the assignments of error are deemed abandoned. *Id.* Since plaintiffs have

not brought forward and argued any questions regarding summary judgment for Hall on the claims asserted by plaintiffs husband and daughter, we deem those questions abandoned.

Plaintiff Linda Watts (hereafter "plaintiff") contends the court erred in granting summary judgment for Hall with respect to each of her claims. G.S. 1A-1, Rule 56(c) permits the granting of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment, the court must look at the record in the light most favorable to the party opposing the motion. *Patterson v. Reid*, 10 N.C. App. 22, 28, 178 S.E. 2d 1, 5 (1970).

[2, 3] A defendant who moves for summary judgment assumes the burden of positively and clearly showing that there is no genuine issue as to any material fact and that he or she is entitled to judgment as a matter of law. *See Bernick v. Jurden*, 306 N.C. 435, 440, 293 S.E. 2d 405, 409 (1982); *Page v. Sloan*, 281 N.C. 697, 705, 190 S.E. 2d 189, 194 (1972); *Miller v. Snipes*, 12 N.C. App. 342, 344, 183 S.E. 2d 270, 272 (1971), *cert. denied*, 279 N.C. 619, 184 S.E. 2d 883 (1971). A defendant may meet this burden by (1) proving that an essential element of plaintiff's claim is nonexistent, or (2) showing through discovery that plaintiff cannot produce evidence to support an essential element of his or her claim, or (3) showing that plaintiff cannot surmount an affirmative defense which would bar the claim. *Bernick*, 306 N.C. at 440-41, 293 S.E. 2d at 409. If the defendant fails to meet this initial burden of proof, the motion must fail even though the plaintiff does not submit any affidavits or other supporting materials in opposition to the motion. *See Best v. Perry*, 41 N.C. App. 107, 110, 254 S.E. 2d 281, 284 (1979); *Edwards v. Bank*, 39 N.C. App. 261, 269, 250 S.E. 2d 651, 657 (1979). The plaintiff is not required to present evidence to support his or her claim unless the defendant meets the initial burden of proof. *Id.* Once the defendant satisfies his or her burden of proof, however, the burden shifts to the plaintiff to present a forecast of evidence which shows that a genuine issue of fact exists, or to provide an excuse for not so doing. *Bernick*, 306 N.C. at 441, 293 S.E. 2d at 409; *Best*, 41 N.C. App. at 110, 254 S.E. 2d at 284. If the plaintiff does not respond as required, summary judgment, if ap-

propriate, should be entered for defendant. *See Best*, 41 N.C. App. at 110, 254 S.E. 2d at 284.

## II.

[4] We briefly address Hall's contention that because plaintiffs allegedly failed to comply with G.S. 1A-1, Rule 15(a), the original complaint rather than the amended complaint should be considered in determining whether he was entitled to summary judgment. Rule 15(a) provides, in relevant part:

> A party may amend his pleading once as a matter of course at any time before a responsive pleading is served . . . . Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. . . .

The original complaint was filed by plaintiffs without the assistance of counsel. Hall answered and plaintiffs thereafter retained counsel who filed an amended complaint. The record does not show whether plaintiffs obtained leave of court or the written consent of the defendants to amend their pleading. Hall contends that plaintiffs did neither and that therefore the amended complaint should be disregarded. We note as well that in a companion appeal (No. 8412SC693) from the entry of summary judgment for several of the remaining defendants, the defendants admit that plaintiffs obtained leave of court to file the amended complaint.

It does not appear that Hall objected to the amended complaint or raised the issue of its validity before the trial court. Instead, Hall indicated his consent to the amended complaint by filing an answer to it, by responding to the allegations within it, and by submitting materials in support of his motion for summary judgment. Clearly, the parties and the court treated the amendment of the complaint as proper. A contention not raised in the trial court may not be raised for the first time on appeal. *Hall v. Hall*, 35 N.C. App. 664, 665-66, 242 S.E. 2d 170, 172 (1978), *disc. rev. denied*, 295 N.C. 260, 245 S.E. 2d 777 (1978). Accordingly, the validity of the amended complaint is not before us and we proceed on the assumption that the amendment was proper.

## III.

We next consider whether the court erred in granting summary judgment for Hall on plaintiff's breach of fiduciary duty

claim. Plaintiff alleged: that Hall is a practicing marital and family therapist duly certified as provided by G.S. 90-270.45 *et seq.*; that he maintains a counseling practice in Fayetteville; that he is a health care provider as defined in G.S. 90-21.11; that in late 1974 or 1975 she began treatment with Hall to help her deal with pain she was suffering from injuries sustained in an automobile accident; that she continued to accept counseling from Hall until July 1981; that she never gave any release or waiver, written or oral, authorizing Hall to discuss her case with anyone; that, to the contrary, she explicitly and consistently instructed him not to involve himself in her medical case; that Hall owed her a duty of confidentiality; that her communications with Hall were privileged; that Hall breached his fiduciary duty to her in that he disclosed confidential information about her to others without her knowledge or consent in spite of her explicit instructions to the contrary; and that consequently she suffered a loss of her privacy and a destruction of her confidential relationship. Plaintiff further alleged that Hall continued to discuss her case after she dismissed him as her counselor in July 1981; that specifically Hall discussed her case with Dr. Pennick after she dismissed Hall even though she had told him not to; and that in 1978 Dr. Pennick and Hall exchanged letters reflecting a referral arrangement between them and freely discussed plaintiff's affairs without her knowledge or consent.

In his answer Hall admitted that he was at the time of the institution of this action a duly certified marital and family therapist as described in Chapter 90, Article 18C of our General Statutes; that he maintains a counseling practice in Fayetteville; and that in late 1974 or 1975 and thereafter, plaintiff sought and accepted his counseling services. He further admitted that he had referred plaintiff to Dr. Pennick and to another doctor, Dr. Toole, in an effort to aid her in obtaining the best medical assistance available; and that as a part of his continuing interest in her he had discussed verbally and in writing the problems he found confronting her. He denied the remaining allegations. In an affidavit in support of his motion for summary judgment, Hall again admitted that he had communicated with Doctors Pennick and Toole, to whom he had referred plaintiff, as a part of his continuing interest in her welfare. Hall submitted nothing further in support of his motion with respect to this claim.

In an affidavit in opposition to the motion, plaintiff reasserted her allegations in greater detail and further stated that Hall had admitted to her that he had spoken with and/or written to four of the doctors she had seen regarding her medical case, including Doctors Pennick and Toole.

We first determine whether plaintiff has stated a claim upon which relief can be granted. Allegations should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no facts that would entitle her to relief. *O'Neill v. Bank*, 40 N.C. App. 227, 232, 252 S.E. 2d 231, 235 (1979). Plaintiff seeks to hold Hall liable as a health care provider for his alleged unauthorized disclosure of confidential information about her, which disclosure allegedly breached his duty of confidentiality. Our courts have not previously considered whether a cause of action may be maintained against a health care provider based upon unauthorized disclosure of confidential information about a patient; however, several jurisdictions have considered the validity of such a claim asserted against a physician or psychiatrist. *See* Annot., 20 A.L.R. 3d 1109 (1968). The majority have upheld the patient's right to recover from a physician for unauthorized disclosures. *See, e.g., Humphers v. First Interstate Bank*, 684 P. 2d 581, 587 (Or. App. 1984), *petition for review allowed*, 687 P. 2d 795 (Or. 1984); *MacDonald v. Clinger*, 84 A.D. 2d 482, 486, 446 N.Y.S. 2d 801, 804 (1982). Various theories have been suggested as a basis for the cause of action, including invasion of privacy, breach of implied contract, breach of fiduciary duty or duty of confidentiality, and medical malpractice. Courts considering the issue have not agreed upon the proper characterization of the cause of action and, in some cases, have held that liability may be imposed under more than one theory. *See, e.g., Humphers v. First Interstate Bank*, 684 P. 2d at 587-88; *Horne v. Patton*, 291 Ala. 701, 708-11, 287 So. 2d 824, 829-32 (1973).

[5] We believe the cause should be characterized as one for medical malpractice. Our legislature, by enactment of Article 1B, Chapter 90, titled "Medical Malpractice Actions," has indicated that a medical malpractice action is any action for damages for personal injury or death arising out of the furnishing or the failure to furnish professional services by a health care provider as defined in G.S. 90-21.11. The term "health care provider" is defined in G.S. 90-21.11 as:

any person who pursuant to the provisions of Chapter 90 of the General Statutes is licensed, or is otherwise registered or certified to engage in the practice of or otherwise performs duties associated with any of the following: medicine, surgery, dentistry, pharmacy, optometry, midwifery, osteopathy, podiatry, chiropractic, radiology, nursing, physiotherapy, pathology, anesthesiology, anesthesia, laboratory analysis, rendering assistance to a physician, dental hygiene, psychiatry, psychology; or a hospital as defined by G.S. 131-126.1(3); or a nursing home as defined by G.S. 130-9(e)(2); or any other person who is legally responsible for the negligence of such person, hospital or nursing home; or any other person acting at the direction or under the supervision of any of the foregoing persons, hospital, or nursing home.

Article 18C of Chapter 90 provides for the certification of marital and family therapists, and such persons clearly engage in the practice of or otherwise perform duties associated with psychology. Thus, certified marital and family therapists are health care providers as defined in G.S. 90-21.11, and any action for damages for personal injury or death arising out of their furnishing or failure to furnish professional services should be characterized as a medical malpractice action. Since plaintiff alleged that Hall is a certified marital and family therapist and thus is a health care provider, and since her cause of action arises from Hall's furnishing of professional services, it appears that the action is one for medical malpractice as our statutes broadly define it.

Although negligence is the predominant theory of liability in a medical malpractice action, it is not the only theory on which a plaintiff may proceed. *See* Black's Law Dictionary 864 (rev. 5th ed. 1979). Malpractice consists of any professional misconduct, unreasonable lack of skill or fidelity in professional or fiduciary duties, evil practice, or illegal or immoral conduct. *Id.* This Court has recognized that a health care provider may be liable for medical malpractice based in part upon the provider's breach of a duty to maintain the patient's trust and confidence. *See Mazza v. Huffaker*, 61 N.C. App. 170, 176-77, 300 S.E. 2d 833, 837-38 (1983), *disc. rev. denied*, 309 N.C. 192, 305 S.E. 2d 734 (1983). In *Mazza*, a patient sought to recover compensatory and punitive damages from his psychiatrist on grounds of negligence, criminal conversation, and alienation of affections. The patient alleged that the psychia-

trist had been negligent in his care and treatment of him, and thus had committed medical malpractice, by having sexual relations with the patient's wife. Expert testimony showed that a psychiatrist has a duty to do no harm to his patient and to maintain the patient's trust and confidence, that sexual relations between a psychiatrist and the patient's spouse is a violation of that duty, and that such conduct by the defendant psychiatrist was not in accord with the standard of care applicable to him. *Id.* The jury returned a verdict for the patient on his medical malpractice and criminal conversation claims and awarded him damages. *Id.* at 172-73, 300 S.E. 2d at 836. This Court found the evidence sufficient to support a claim for professional malpractice and upheld the judgment entered on the verdict. *Id.* at 189, 300 S.E. 2d at 845.

[6]　Although our Supreme Court denied the psychiatrist's petition for discretionary review, *Mazza v. Huffaker*, 309 N.C. 192, 305 S.E. 2d 734 (1983), it did review the judgment entered in a related action brought by the patient against the psychiatrist and his insurer. *See Mazza v. Medical Mut. Ins. Co.*, 311 N.C. 621, 319 S.E. 2d 217 (1984). In that action the patient sought a determination whether the insurer was liable under its physicians' liability insurance policy for the damages awarded. The Court, in holding that the insurer was liable for the damages under its policy, agreed that the psychiatrist's conduct constituted medical malpractice. *Id.* at 626, 319 S.E. 2d at 220. By thus recognizing that a psychiatrist's conduct in having sexual relations with his patient's spouse may constitute medical malpractice, our Courts acknowledged the broad nature of that term as defined in our statutes. Guided by these decisions, we conclude that a health care provider's unauthorized disclosure of a patient's confidences constitutes medical malpractice.

[7]　As in any medical malpractice action, plaintiff must show that the defendant health care provider had a duty to conform to a certain standard of conduct and that a breach of that duty proximately caused an injury. *See* E. Hightower, North Carolina Law of Damages, Sec. 36.13, at 434 (1981); *see also Lowery v. Newton*, 52 N.C. App. 234, 237, 278 S.E. 2d 566, 570 (1981). Plaintiff alleged all the essential elements of malpractice in her claim for breach of fiduciary duty and it does not appear beyond doubt that she cannot prove any facts in support of her claim that would entitle her

to relief. *See O'Neill*, 40 N.C. App. at 232, 252 S.E. 2d at 235. Thus, plaintiff stated a claim upon which relief can be granted.

[8, 9]   Hall's affidavit in support of his motion shows only that he did in fact communicate with at least two of plaintiff's doctors and suggests that those communications were justified. Such a showing is clearly insufficient to satisfy the burden placed on a defendant moving for summary judgment. Moreover, it does not appear that Hall was entitled to summary judgment on the ground that plaintiff's claim is barred by the statute of limitations. Since plaintiff's claim is one for malpractice arising out of the performance of professional services, the applicable statute is G.S. 1-15(c) rather than G.S. 1-52 as Hall alleges. G.S. 1-15(c) provides that a cause of action for malpractice arising out of the performance of professional services shall be deemed to accrue at the time of the occurrence of the last act of the defendant giving rise to the cause of action, and that in such cases a limitation of no less than three years shall apply. The last act giving rise to the present cause of action was Hall's alleged unauthorized discussion with Dr. Pennick which occurred no earlier than July 1981; therefore, the cause of action accrued at the time of that discussion. Since plaintiff's action was instituted within three years after July 1981, it is not barred by the statute of limitations as a matter of law.

We conclude that the court erred in granting summary judgment for Hall on plaintiff's breach of fiduciary duty claim.

## IV.

Plaintiff alleged as a separate cause of action: that Hall owed her a duty of care when he undertook to be her counselor; that he breached that duty in that he negligently conducted his counseling and exceeded the proper parameters of his counseling role; and that she was damaged by Hall's negligence in that she has suffered self-doubt, emotional distress, and confusion. This cause is based on Hall's alleged negligence in furnishing his professional services and is thus more clearly one for medical malpractice. To support his motion for summary judgment on this claim, Hall submitted an affidavit in which he stated, in relevant part:

that he is familiar with accepted standards for marital and family therapists at the time and place Mrs. Watts was seen

and treated by him and that in his opinion his conduct regarding Mrs. Watts and his counseling with her as well as his attempt to help her obtain the best medical assistance available was fully and entirely in accordance with such accepted standards of practice for marital and family therapists in North Carolina.

In the documents submitted by plaintiff in opposition to Hall's motion plaintiff set forth a detailed forecast of her evidence on this claim. Plaintiff submitted an affidavit in which she stated that she first sought Hall's counseling services because of marital stress caused by her husband's drinking, and that she spoke to Hall about the severe pain she had been suffering since the automobile accident in hopes that he could help her deal with the emotional aspect of the pain. She further stated, in pertinent part:

> 5. From the beginning, Dan Hall tried to make me accept that . . . my pain was predominantly emotional. . . .
>
> . . . .
>
> 7. . . . [H]e . . . often discouraged me from going to see any other doctor. He would also constantly be asking who I was seeing, why I was going, what they said, and so forth. He seemed almost obsessed by it. A lot of times after I would have an appointment I would go to talk to Dan and find that he seemed to already know much of what I was going to say. Ultimately, I learned that he was in close communication with the various doctors I was attempt[ing] to get help from.
>
> 8. From the beginning, I would frequently decide not to talk with Dan anymore because I would often become so upset after our appointments. But when I wouldn't call for an appointment for more than a week or so, there he would be calling me to schedule one. If I told him I didn't feel I needed to talk to him anymore, he would start working on me and working on me over [the] phone, or coming by the house. He would not only talk to me, but he would be aggravating and harassing my entire family. He would get me feeling so guilty about not talking to him that I would finally agree. . . .
>
> 9. As early as 1976, friends and family would try to tell me that it seemed Dan Hall was manipulating my life and in-

terfering with my attempts to get medical attention for my back and neck. I wouldn't believe it. . . .

. . . .

16. After I confronted Dan Hall with his interfering with my medical care and told him that I did not want to see him ever again, he began to call the house even more than before. During one period, he called five, six, even seven times a day trying to talk to me, to get me to come see him again. He continued to call for months after our last meeting. In fact, he only stopped when I told him that I had seen an attorney and was going to file suit.

17. In addition to Dan Hall's interfering in my medical care, talking with the other doctors and conspiring to keep me ignorant of my true condition, violating my trust and breaching our confidential relationship, he also made many improper advances toward me. He has attempted to kiss me. He has attempted to feel my breast. He was always touching and trying to hug me. He has asked me if I fantacized [sic] about making love to him. He has asked me very detailed questions about my sexual thoughts and activity. One day he asked me if I wore bikini underwear. On another occasion, after I had had abdominal surgery, he asked me to drop my pants to show my scar.

. . . .

19. In addition . . ., it seemed that Dan would often try to stir up trouble between me and my family. . . . We had many arguments at home which were caused solely and completely by Dan Hall. . . . Each time we had such an occurrence, he would be right there wanting to help me through the difficulty — difficulties which he caused. I fully believe that he knew what he was doing and was doing it deliberately.

Plaintiff also submitted: affidavits of her husband and two children in which they confirmed and expanded upon plaintiff's allegations; the affidavit of the family's priest and counselor, Giacomo Ghisalberti; and exhibits which showed that prior to Hall's certification as a marital and family therapist, Hall held himself out as a pastoral counselor with a master's degree in

divinity. Ghisalberti stated in his affidavit that he is familiar with and knowledgeable of the standard of practice in Fayetteville for a pastoral, family, and marital counselor, and that in his opinion Hall's conduct in counseling plaintiff fell far short of that standard of practice in several respects. Ghisalberti then explained in considerable detail the ways in which Hall's counseling deviated from accepted practice.

In response to Ghisalberti's affidavit Hall filed a further affidavit in which he stated: that he is a duly qualified, registered, and licensed therapist in the field of family and marriage counseling; that he has never met or had any connection with Ghisalberti; and that he believes Ghisalberti is neither a registered nor a licensed therapist in family or marital counseling in this State and has never practiced in this State in this field of health care providers. It appears from the judgment that plaintiffs admitted that Ghisalberti was not registered or licensed in this State as a marital and family therapist as defined in Chapter 90 and that the court relied on plaintiffs' admission in concluding that Hall was entitled to summary judgment.

To support his motion for summary judgment on this claim, Hall attempted to show that plaintiff could not prove that he breached his duty to her by failing to conduct his counseling in accordance with accepted standards of practice. He did this by attempting to show that Ghisalberti was not qualified to testify about the applicable standard of care because he was not a certified family and marital therapist as defined in G.S. 90-270.47(3), as was Hall, when this action was commenced. It was Hall's position that since Ghisalberti's affidavit was the only evidence presented by plaintiff regarding the applicable standard of care and Hall's deviation therefrom, plaintiff's forecast of evidence was fatally deficient. The court apparently agreed that Ghisalberti's lack of certification as a marital and family therapist rendered him incompetent to testify about the applicable standard of care, and it thus did not consider Ghisalberti's affidavit in ruling on Hall's motion.

Since Hall, as a certified marital and family therapist, is a health care provider as defined in G.S. 90-21.11, and plaintiff's claim is one for damages for personal injury arising out of Hall's furnishing of his professional services, Hall can be liable for

damages only if it is shown by the greater weight of the evidence that the care he provided did not accord with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities at the time of the alleged act(s) giving rise to the cause of action. *See* G.S. 90-21.12. Plaintiff has the burden of establishing the standard of care required of practitioners in Hall's field of practice, as well as Hall's breach thereof. *See Whitehurst v. Boehm*, 41 N.C. App. 670, 673, 255 S.E. 2d 761, 765 (1979).

[10] The applicable standard of care for a health care provider must be established by other practitioners in the particular field of practice or by other expert witnesses equally familiar with and competent to testify regarding that limited field of practice. *See Whitehurst*, 41 N.C. App. at 677, 255 S.E. 2d at 767. The test of a witness' qualification as an expert on the applicable standard of care in a malpractice case should be whether the witness has adequate knowledge of the customary standards of practice to be of help to the jury. *See*, Byrd, The North Carolina Medical Malpractice Statute, 62 N.C. L. Rev. 711, 730 (1984). A witness' testimony should not be excluded because there are other witnesses who are better qualified or more knowledgeable. *Id.* It is well settled that to qualify as an expert, a witness need not be a specialist, or have a license from an examining board, or have had experience with the exact subject matter involved, or be engaged in any particular profession. *See* 1 H. Brandis on North Carolina Evidence, Sec. 133, at 514-15 (1982). It is enough that, through study or experience, the witness is better qualified than the jury to form an opinion on the particular subject. *Id.* at 515.

[11] We find that the court acted under a misapprehension of law in concluding that Ghisalberti was not qualified to testify about the relevant standard of care simply because he was not certified as a marital and family therapist, and that it thus erred in concluding that plaintiff's forecast of evidence was insufficient. It is significant that there was no certification agency or procedure for marital and family therapists prior to 1 October 1979 when G.S. 90-270.45 *et seq.* became effective. Thus, neither Hall nor Ghisalberti could have been certified as a marital and family therapist prior to 1 October 1979. The court should have determined Ghisalberti's qualification as an expert on the standard of

care applicable to Hall by ascertaining whether, based on his education and experience, he had adequate knowledge of the standards of practice among pastoral, marital and family therapists in Fayetteville from 1974 until 1981 to be of help to the jury. *See* G.S. 90-21.12; Byrd, *supra*.

[12] In his affidavit Ghisalberti stated: that he had been a Catholic priest since 1971; that he had masters degrees in philosophy and divinity; that he had studied psychology at the University of Detroit in 1967 and 1968; that he had received almost one year's academic and intern training in counseling and psychotherapy at a state hospital in Pennsylvania for which he received a diploma in those subjects; that while working as a priest from 1971 to 1978 he had functioned as a pastoral, family and marital counselor; and that he began law school in 1978 and is now a practicing attorney. He further stated that he had frequent dealings with other counselors, psychologists, and psychiatrists practicing in the Fayetteville area during the relevant time period and that he continued to have periodic contact with those persons.

We find this evidence sufficient to establish Ghisalberti's qualification to testify about the relevant standards of practice and Hall's deviation from those standards. The court thus should have considered his affidavit in weighing the sufficiency of plaintiff's forecast of evidence. Assuming, without deciding, that the materials offered by Hall in support of his motion were sufficient to shift the burden to plaintiff to forecast evidence in support of her claim, we conclude that plaintiff met her burden. We find that the evidence forecast was sufficient to show a genuine issue of material fact with respect to plaintiff's claim and that Hall was not entitled to summary judgment thereon.

Nor was Hall entitled to summary judgment on the ground that this cause of action is barred by the statute of limitations. Since the claim is for medical malpractice, G.S. 1-15(c) applies. It is clear from the pleadings and documents in opposition to Hall's motion that the last act giving rise to the cause of action occurred within three years of the institution of this action; therefore, the cause is not barred. Accordingly, the court erred in entering summary judgment thereon for Hall.

Arguably, one of the ways in which Hall was negligent in his counseling of plaintiff was by revealing confidential information

about her to others without her authorization, and plaintiff's breach of fiduciary duty claim therefore is included within her negligence claim. Since plaintiff asserted these claims as separate causes of action, we have addressed them as such. Assuming, *arguendo*, that the two claims form the basis of a single cause of action, we find that defendant failed to show that he was entitled to summary judgment thereon.

### V.

Lastly, we address plaintiff's contention that the court erred in granting summary judgment for Hall on her fraudulent concealment claim. Plaintiff alleged: that she sustained injuries in an automobile accident on 7 June 1974; that thereafter she was treated by the defendant doctors and counseled by Hall; that the defendants fraudulently concealed the true nature of her condition; that the medical defendants knew or should have known of her condition; that the medical defendants made false representations of material facts and opinions which served to conceal from plaintiff the true nature and extent of her injuries with the intention of preventing her from discovering that the fracture had been overlooked at the initial examination; that such misrepresentations directly prevented her from obtaining the necessary treatment in time to ward off arachnoiditis and further complications; that she justifiably relied on defendants' representations; and that she was damaged by her reliance in that she did not receive the needed medical treatment in a timely manner. She further alleged that Hall intentionally assisted the medical defendants in their fraudulent concealment through his unauthorized disclosures of plaintiff's confidences and through his counseling of her, beginning in 1975 and continuing until 1981 when she realized that Hall was intermeddling well beyond the scope of the counseling function.

Plaintiff also set forth more detailed allegations regarding when and where she was treated by the defendant doctors and their diagnosis or treatment of her. It is clear from the complaint as a whole, and particularly from plaintiff's allegations of negligence, that the defendants informed plaintiff that her distress was attributable to her psychological state rather than to any physical injuries. Plaintiff alleged, in relevant part, that:

After she was treated by several of the defendant doctors including Dr. Pennick, she was examined in May 1979 by another doctor, Dr. Coin, who performed a CT Scan. After reviewing the scan, Dr. Coin advised her that she was suffering from a broken back and spine. The next day Dr. Coin went to Cumberland County Hospital to examine the x-rays taken on the day of plaintiff's accident. Thereafter Dr. Coin advised plaintiff that he saw the two neck breaks on the original x-ray but that the original lumbar film was missing.[1]. Plaintiff took Dr. Coin's results to defendant Pennick who treated her from June 1977 through September 1979. She contacted Pennick again in June 1981. In 1978 Hall and Pennick, fraudulently and without plaintiff's knowledge or consent, freely discussed plaintiff's affairs. Hall continued to discuss plaintiff's record and case with others including Pennick after Hall was dismissed as her counselor in July 1981. Defendants Toole, who treated plaintiff in May and June of 1981, and Pennick breached their fiduciary duty to plaintiff by disclosing her medical records to Hall.

[13] The essential elements of actionable fraud are: (1) false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party. *Terry v. Terry*, 302 N.C. 77, 83, 273 S.E. 2d 674, 677 (1981). It is well settled that where there is a duty to speak the concealment of a material fact is equivalent to fraudulent misrepresentation. *Griffin v. Wheeler-Leonard & Co.*, 290 N.C. 185, 198, 225 S.E. 2d 557, 565 (1976).

Silence, in order to be an actionable fraud, must relate to a material matter known to the party and which it is his legal duty to communicate to the other . . . party, whether the duty arises from a relation of trust, from confidence, inequality of condition and knowledge, or other attendant circumstances. . . . the silence must, under the conditions existing, amount to fraud, because it amounts to an affirmation that a state of things exists which does not, and the

---

1. Although plaintiff alleged that Dr. Coin advised her that she had a broken back and spine, it is clear from the record that the injuries allegedly discovered by Dr. Coin and which plaintiff claims to have sustained in the accident were fractures in her *neck* and back.

uninformed party is deprived to the same extent that he would have been by positive assertion.

*Setzer v. Insurance Co.*, 257 N.C. 396, 399, 126 S.E. 2d 135, 137 (1962), quoting 23 Am. Jur., Fraud and Deceit, Sec. 77. It is clear that the false representation or concealment which is the basis of plaintiff's claim against Hall is his failure to tell her, in the course of his counseling, that her pain was caused by physical injuries she received in the 1974 accident rather than by her psychological state.

[14]  G.S. 1A-1, Rule 9(b) provides that in all averments of fraud the circumstances constituting fraud must be stated with particularity. This requirement is met by alleging time, place, and content of the fraudulent misrepresentation, identity of the person making the misrepresentation, and what was obtained as a result of the fraudulent acts or representations. *Terry v. Terry*, 302 N.C. at 85, 273 S.E. 2d at 678; *see also*, G.S. 1A-1, Rule 9(f).

[15]  We conclude that the allegations in the amended complaint are sufficient to satisfy the particularity requirement of G.S. 1A-1, Rule 9(b) and to state a claim for relief against Hall based on fraud. Plaintiff alleged all the essential elements of a claim based on fraud and alleged the circumstances surrounding the fraud in as much detail as reasonably should be required.

[16]  Hall denied the allegations of fraudulent concealment in his answer and in an affidavit submitted in support of his motion. He also submitted the affidavits of defendants Askins, Moress, Keranen, Pennick, and Alexander, in all of which the following denial appears: "I have never, fraudulently or otherwise, concealed the true nature or extent of Mrs. Watts' injuries or condition, nor have I ever made any false representation of any kind to Mrs. Watts, nor has any other health care provider done so to my knowledge." These conclusory, self-serving denials are clearly insufficient to show that Hall is entitled to summary judgment. *See Lee v. Shor*, 10 N.C. App. 231, 235, 178 S.E. 2d 101, 104 (1970).

In addition, Hall offered in support of his motion "all matters of record as of the date of the filing of this motion." While it is not clear what documents were included within that description, it appears from the record that plaintiff's answers to interrogatories and documents filed by plaintiff in response to defend-

ants' requests for production of documents, which primarily consist of plaintiff's medical records from 1968 until 1983, were submitted for consideration in ruling on the motion. Copies of those documents are included in the record on appeal. Plaintiff's answers to interrogatories simply expand upon and support the allegations in plaintiff's complaint.

Plaintiff's medical records, however, clearly reveal the existence of a genuine issue as to whether plaintiff in fact sustained the injuries she claims. All doctors who examined plaintiff after the accident, defendant doctors as well as others, except for Dr. Coin, found that plaintiff had no fractures. It is not clear whether any of the doctors not named as defendants, other than Dr. Coin, examined plaintiff's original x-rays. Dr. Coin found fractures, however, and his reports are fairly detailed and not inherently incredible. The record does not show that any other materials were submitted by Hall in support of his motion nor does it contain any other materials.

Allegations of fraud do not readily lend themselves to resolution by summary judgment because a cause of action based on fraud necessarily requires determining the state of mind of the party accused, which ordinarily must be proved by circumstantial evidence. *See Johnson v. Insurance Co.*, 300 N.C. 247, 260, 266 S.E. 2d 610, 619 (1980); *Bank v. Belk*, 41 N.C. App. 328, 339, 255 S.E. 2d 430, 437 (1979), *disc. rev. denied*, 298 N.C. 293, 259 S.E. 2d 299 (1979).

> This renders summary judgment inappropriate in a fraud case where the court is called upon to draw a factual inference in favor of the moving party, . . . or where the court is called upon to resolve a genuine issue of credibility. . . . However, the issue of fraud may be summarily adjudicated when it is clearly established that there is no genuine issue of material fact. (Citations omitted.)

*Johnson*, 300 N.C. at 260, 266 S.E. 2d at 619. We conclude that Hall failed to meet his burden of clearly showing that there is no genuine issue of material fact with respect to this claim.

[17]   We note that plaintiff indicates in her brief that a later medical report prepared by Dr. Coin was offered by Hall at the summary judgment hearing. Plaintiff has included a copy of that

report in an appendix to her brief. This is not approved. *See Calhoun v. Calhoun,* 7 N.C. App. 509, 512, 172 S.E. 2d 894, 896 (1970). This Court can judicially know only what appears of record. *In re Sale of Land of Warrick,* 1 N.C. App. 387, 390, 161 S.E. 2d 630, 632 (1968). Matters discussed in a brief, or exhibits in an appendix thereto, which are outside the record will not be considered. *See Calhoun* and *Warrick, supra.* There is no indication in the record that this report was offered at the summary judgment hearing or considered by the court in ruling on the motion. Accordingly, we have not considered this report in determining the issue presented.

[18]    A cause of action based on fraud must be brought within three years after discovery by the aggrieved party of the facts constituting the fraud. G.S. 1-52(9). The record tends to show that plaintiff instituted this action on or about 1 June 1982 and that she did not discover that Hall had been in contact with her doctors and was concealing the alleged true nature of her condition until after 1 June 1979. Thus, her cause of action against Hall for fraudulent concealment is not barred by the statute of limitations. Whether plaintiff in the exercise of reasonable care and due diligence should have discovered the fraud prior to 1 June 1979 is a question of fact for the jury. *See Feibus & Co. v. Construction Co.,* 301 N.C. 294, 304-05, 271 S.E. 2d 385, 392 (1980), *reh. denied,* 301 N.C. 727, 274 S.E. 2d 228 (1981).

We conclude that the court erred in granting summary judgment for Hall on plaintiff's fraudulent concealment claim.

Accordingly, we reverse the summary judgment for Hall on the claims asserted by plaintiff Linda Watts. Because plaintiffs have not argued that the summary judgment entered on the claims asserted by plaintiffs George Watts and Kim Watts should be reversed, that summary judgment is affirmed. N.C. R. App. P. 28(a).

Affirmed in part; reversed in part.

Judge WELLS concurs in part and dissents in part.

Judge BECTON concurs.

Judge WELLS concurring in part and dissenting in part.

I concur with that part of the majority opinion which recognizes that plaintiff's breach of fiduciary duty claim constitutes a malpractice claim and that summary judgment for defendant Hall was improvidently granted on that claim.

I also concur that summary judgment was improvidently granted for defendant Hall on plaintiff's malpractice (negligent and improper counseling) claim.

I dissent from that part of the majority opinion which holds that plaintiff has stated, or can support, a separate claim for fraudulent concealment against defendant Hall. Relying on much of the same reasoning used by the majority with respect to plaintiff's "breach of fiduciary duty" claim, it is my opinion that plaintiff's fraudulent concealment claim is but another aspect or dimension of her malpractice claim.