FAYE ELLEN SULTAN AND BRAD FISHER, PLAINTIFFS V. STATE BOARD OF EXAMINERS OF PRACTICING PSYCHOLOGISTS, DEFENDANT, AND THE NORTH CAROLINA PSYCHOLOGICAL ASSOCIATION, DEFENDANT-INTERVENOR/ COUNTERCLAIMANT

No. 9426SC70

(Filed 5 March 1996)

**Physicians, Surgeons, and Other Health Care Professionals § 54 (NCI4th)— voluntary professional association— disclosure of patient information—requirements of membership**

Where an ethics complaint was filed with the North Carolina Psychological Association (NCPA) against plaintiff psychologist by another psychologist, the contractual nature of plaintiff's membership in the NCPA did not require her to produce to NCPA upon its request confidential information concerning a patient without the patient's consent.

**Am Jur 2d, Physicians, Surgeons and Other Healers §§ 74 et seq.**

**Physician's tort liability for unauthorized disclosure of confidential information about patient. 48 ALR4th 668.**

Appeal by defendant-intervenor/counterclaimant from judgment entered 13 November 1993 by Judge C. Walter Allen in Mecklenburg County Superior Court. Heard in the Court of Appeals 5 April 1995.

SULTAN v. STATE BD. OF EXAMINERS OF PRACTICING PSYCHOLOGISTS

[121 N.C. App. 739 (1996)]

*Lesesne & Connette, by Edward G. Connette, for plaintiff appellee.*

*Tharrington, Smith & Hargrove, by Ann L. Majestic and Marcus W. Trathen, for defendant-intervenor/counterclaimant appellant.*

*Fuller, Becton, Billings & Slifkin, P.A. by James C. Fuller and Mary Ann Tally for North Carolina Academy of Trial Lawyers, amicus curiae.*

JOHN, Judge.

The North Carolina Psychological Association (NCPA) appeals the trial court's entry of summary judgment in favor of Dr. Faye Ellen Sultan (Sultan), permanently enjoining NCPA from requiring Sultan to disclose information regarding one of her patients. We affirm the trial court.

Relevant factual and procedural information is as follows: In 1989, an individual denominated for purposes of the instant proceeding as "Patient K" (K) filed a civil action in Wake County Superior Court against the North Carolina Correctional Institute for Women (Women's Prison). K alleged violation of her constitutional rights arising out of the conditions of her confinement. She sought to remain in the mental health unit of Women's Prison where she was being held pending trial on criminal charges, rather than being moved to a dormitory. K asserted that the latter course would aggravate her condition of claustrophobia and result in deterioration of her mental health.

K's attorney hired Sultan, a clinical psychologist, to evaluate the potential effect on K's mental health of transfer to a prison dormitory. Sultan conducted a psychological assessment of K on 10 October 1989, and was thereafter called by K's counsel as an expert witness in the civil proceeding on 19 October 1989.

Sultan testified that placing K in a dormitory unit "would result almost immediately in such a rapid deterioration in her psychological condition that [K] would almost surely be psychotic within 24 or 36 hours." Sultan further stated that such psychosis "might be irreversible." Dr. Paula Clarke (Clarke), psychological program manager at the Women's Prison, also testified at the proceeding. In her opinion, K presented no psychotic symptoms and the proposed transfer represented no threat to K's mental health.

Some days thereafter, Sultan received notification from the North Carolina State Board of Examiners of Practicing Psychologists (the Board) that Clarke had filed a complaint against her. Included among Clarke's allegations were the following:

> Dr. Sultan appears to be involved in [a] relationship with [K's] attorneys for financial gain and/or personal reasons . . . . Her conclusions do not necessarily follow from test results or general knowledge of psychopathology. The limitation of her findings were never expressed in testimony nor to [K] who seems to believe that she is dangerously mentally ill.

Pursuant to N.C.G.S. § 90-270.9 (1993), the Board served Sultan with an order to produce all records relating to psychological services provided to K. The statute provides in pertinent part:

> The Board may order that any records concerning the practice of psychology relevant to a complaint received by the Board or an inquiry or investigation conducted by or on behalf of the Board be produced before the Board or for inspection and copying by representatives of or counsel to the Board by the custodian of such records.

Clarke also filed a complaint with the Board against Dr. Brad Fisher (Fisher), who had testified on K's behalf at a 25 September 1989 bond reduction hearing. At the hearing, Fisher expressed the opinion that K suffered from claustrophobia and that being in a confined space, such as a traditional jail cell, would exacerbate this condition.

Clarke's complaint alleged, *inter alia,* that Fisher "appears to be engaged in [a] relationship with clients [sic] attorneys for financial gain" and that his diagnoses of K were not justified by the test findings he described. Fisher likewise was ordered by the Board to produce all records relating to K.

Sultan and Fisher both subsequently refused to relinquish to the Board their files regarding K. K's attorney withheld consent on her behalf, contending that disclosure would violate K's psychologist-client and attorney-client privileges. Sultan and Fisher requested an administrative determination by the Board of their responsibilities with regards to K's records, but such request was denied.

Clarke also lodged grievances with NCPA against Sultan and Fisher similar to those filed previously with the Board. NCPA is a vol-

untary professional association, serving to promote the profession of psychology, of which both Sultan and Fisher were members. The complaint against Fisher was subsequently resolved and NCPA's investigation of him ceased. However, NCPA pursued its investigation of Sultan, insisting that she divulge information gained in her professional relationship with K. Sultan declined to do so.

Sultan and Fisher thereafter filed the instant action against the Board, seeking, *inter alia*, to enjoin the Board from requiring disclosure of information concerning K, and, in the alternative, a declaratory judgment setting forth the psychologists' legal rights and obligations. In their complaint, the doctors alleged K's Fifth and Sixth Amendment rights as well as the psychologist-patient and attorney-client privileges in support of the claim for an injunction. NCPA subsequently was allowed to intervene and filed a counterclaim against Sultan, alleging she had breached her contract as a member of NCPA by failing to honor its requests for information. The parties thereafter each filed cross-motions for summary judgment which were heard 12 August 1993.

On 13 November 1993, the trial court granted the Board's motion for summary judgment against Sultan and Fisher. It also allowed Sultan's motion against NCPA. Pursuant to the Board's statutory power to obtain such information, Sultan and Fisher were ordered to provide the Board with all records relating to K. However, NCPA was permanently enjoined from requiring disclosure of information concerning K, the court ruling that

[t]he contractual nature of plaintiffs' membership in the North Carolina Psychological Association does not give defendant the right or authority to require plaintiffs to disclose confidential patient records absent consent by the patient.

Sultan and Fisher filed notice of appeal to this Court 1 December 1993, and NCPA filed its notice 10 December 1993.

Subsequent to the parties' appeal, K entered into a plea agreement with the State of North Carolina, resolving the criminal charges against her. Sultan and Fisher thereupon dismissed their appeal, reasoning that K's guilty plea had rendered their claim moot. As a result, only the cause of action between NCPA and Sultan remains before us.

NCPA argues on appeal that

the trial court committed reversible error in finding that the contractual nature of Dr. Sultan's membership in the NCPA did not give the NCPA the right or authority to require Dr. Sultan to disclose information concerning Patient K.

We disagree.

Summary judgment should be granted only where

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.

N.C.R. Civ. P. 56(c).

NCPA agrees that professional policy among psychologists endorses the confidentiality of interactions between psychologists and clients. Indeed, Principle 5 of the Ethical Principles of Psychologists, attached as an exhibit to NCPA's counterclaim, provides as follows:

Psychologists have a *primary* obligation to respect the confidentiality of information obtained from persons in the course of their work as psychologists. They reveal such information to others *only* with the consent of the person or the person's legal representative . . . .

Ethical Principles of Psychologists, adopted by the Council of Representatives of the American Psychological Association, 24 January 1981 (emphasis added). *See also Watts v. Cumberland County Hosp. System*, 75 N.C. App. 1, 11, 330 S.E.2d 242, 250 (1985), *rev'd on other grounds*, 317 N.C. 321, 345 S.E.2d 201 (1986) (health care provider's unauthorized disclosure of patient confidences constitutes professional malpractice). Notwithstanding, NCPA contends that Sultan's contractual duty as a member of the organization to respond to ethics investigations conducted by CSPEC overrides the obligation of confidentiality. This argument is unfounded.

We note initially that our General Assembly has accorded to the Board, not NCPA, both the authority and the responsibility to police the conduct of psychologists in this state. *See* N.C.G.S. § 90-270.15 (1993 & Cum. Supp. 1995). Moreover, N.C.G.S. § 90-270.9 permits *only* the Board to require submission of confidential patient records in the instance of ethics complaints against a psychologist.

In addition, although the relationship between a voluntary professional organization and its members is contractual and members are bound by the organization's regulations and by-laws, *Warehouse Assoc. v. Warehouse*, 231 N.C. 142, 146, 56 S.E.2d 391, 394 (1949), the rules of NCPA do not require disclosure of confidential client information by members without the client's consent.

NCPA's by-laws provide that a purpose of the organization is to "promote high standards of professional ethics," and further that its investigatory body, the Committee on Scientific and Professional Ethics and Conduct [CSPEC], is to "receive and investigate complaints regarding ethically questionable conduct of members."

Included among the "Rules and Procedures" (the Rules) of CSPEC are the following:

> If the complainant is a client or former client of the member complained against, [CSPEC] shall request a waiver by the complainant with respect to the member's duty of confidentiality in regard to matters that are relevant to the case.
>
> . . . .
>
> The member must provide information that is relevant to the complaint. . . . If a member believes there is a conflict between his/her client and CSPEC's request for information, he/she may seek advice from CSPEC in order to resolve the conflict
>
> . . . .
>
> In the case of non-complainants, CSPEC shall make an effort to obtain a waiver from the client if the information would aid in the investigation.

No other provisions deal with production of client records.

Significantly, the complainant against Sultan herein was not her client, K. Therefore, CSPEC obtained no authorization under the Rules to seek a waiver of confidentiality. Moreover, K through her counsel directed Sultan to resist breaching the confidential relationship. While the Rules require Sultan as a member of NCPA to "provide information that is relevant to the complaint," that obligation is specifically limited by the same Rules to circumstances in which the member does not "believe[] there is a conflict between his/her client and CSPEC's request for information"—a circumstance directly contrary to that present *sub judice*. In the event of a perceived conflict,

the member *may*, but is not *required*, to seek the *advice*, but not the *directive*, of CSPEC.

Further, assuming *arguendo* that NCPA's by-laws and rules may be construed impliedly to impose upon Sultan the contractual requirement to disclose private client information without consent of that client, we decline to enforce such a provision.

*Warehouse Assoc.* states that courts will enforce only those "rules and regulations which are not unreasonable, immoral, unlawful, or contrary to public policy." 231 N.C. at 146, 56 S.E.2d at 394. As noted above, NCPA has acknowledged the "primary" status of maintaining confidentiality between psychologists and patients. "Primary" is defined as "first in rank or importance." Webster's Third New International Dictionary 1800 (1967). We have also previously observed that our General Assembly has accorded the power to compel disclosure of confidential patient records solely to the Board. *See* G.S. § 90-270.9. In view of these considerations, we deem "unreasonable," *Warehouse Assoc.* at *id.*, and hence unenforceable, any implied rule governing Sultan's membership in a voluntary professional organization which requires suppression, in favor of that organization, of her *primary* obligation to maintain confidentiality of client communications.

In sum, under the facts of the case *sub judice* and contrary to NCPA's assertion, the contractual nature of Sultan's membership in the organization did not require her to produce to NCPA upon its request confidential information concerning K without the latter's consent. Accordingly, Sultan was entitled to judgment as a matter of law on NCPA's counterclaim and the trial court properly entered summary judgment in her favor.

NCPA also argues that no psychologist-patient privilege existed in the present case because Sultan was not hired to treat K, but merely to diagnosis her condition for a court proceeding. Moreover, NCPA continues, assuming a psychologist-patient privilege initially attached, it was waived when K called Sultan as a witness to testify about her mental condition, and Sultan therefore had no basis to refuse NCPA's request for records. NCPA misapprehends the purport of the law of privilege.

The concept of confidentiality must be distinguished from the law of privilege. An evidentiary privilege is a law that permits a per-

son to prevent a court from requiring revelation of relational communications. Confidentiality refers to a duty, frequently an ethical limitation imposed by a profession, not to disclose relational communications.

Daniel W. Shuman & Myron S. Weiner, *The Privilege Study: An Empirical Examination of the Psychotherapist-Patient Privilege*, 60 N.C. L. Rev. 893, 912 (1982). The presence or absence of psychologist-patient privilege is irrelevant to Sultan's general professional obligation to maintain the confidentiality of client information, subject to G.S. § 90-270.9, in a non-courtroom setting.

Finally, in that the question is briefly touched upon by *amicus* counsel in its appellate brief, we emphasize that the question of NCPA's authority under its by-laws and rules to terminate Sultan's membership is not before us. We therefore express no opinion as to that issue.

Affirmed.

Chief Judge ARNOLD and Judge WYNN concur.