STEPHENS, Judge.
 

 *212
 
 This appeal arises from a partial grant of judgment on the pleadings in favor of Plaintiffs. Defendants argue that Plaintiffs' claims are barred by the doctrine of sovereign immunity, or, in the alternative, that Plaintiffs' claims are either precluded under the principles of declaratory and mandamus relief in this State, or are moot. In light of our well-established precedent regarding interlocutory appeals, only Defendants' sovereign immunity contentions could provide them a path to immediate appellate review. However, because the record in this matter reveals that Defendants did not properly plead or argue sovereign immunity in the trial court, we dismiss this appeal as not properly before us.
 

 Factual and Procedural Background
 

 Although we do not reach the merits of this interlocutory appeal, a brief review of the origins of the case provides helpful context in understanding this matter of significant public import. Defendants Pat McCrory, as Governor of North Carolina; John E. Skvarla, II, as Secretary of the North Carolina Department of Commerce; Donald R. van der Vaart, as Secretary of the North Carolina Department of Environment and Natural Resources; Dr. Aldona Z. Wos, as Secretary of the North Carolina Department of Health and Human Services; Frank L. Perry, as Secretary of the North Carolina Department of Public Safety; William G. Daughtridge, Jr., as Secretary of the North Carolina Department of Administration; Anthony J. Tata, as Secretary of the North Carolina Department of Transportation; Susan W. Kluttz, as Secretary of the North Carolina Department of Cultural Resources; and Lyons Gray, as
 
 *213
 
 Secretary of the North Carolina Department of Revenue (collectively, "the Administration") are our State's governor and his appointees, either currently or formerly
 
 [2]
 
 serving as the heads of various
 
 *245
 
 State agencies. Plaintiffs The News and Observer Publishing Company ("N&O"); The Charlotte Observer Publishing Company ("The Observer"); Capitol Broadcasting Company, Incorporated ("WRAL"); Boney Publishers d/b/a The Alamance News; ZM INDY, Inc. d/b/a Indy Week ("Indy"); and Media General Operations, Inc., are media entities that provide news services to the citizens of our State via print and online newspapers, broadcast television stations, and online news websites. Plaintiffs The Southern Environmental Law Center ("SELC") and The North Carolina Justice Center d/b/a NC Policy Watch are not-for-profit corporations chartered in our State that,
 
 inter alia
 
 , seek to inform the public about various matters of public concern and to advocate for policies that they believe will benefit the people and environment of North Carolina.
 

 As part of their regular activities, Plaintiffs frequently make requests for access to and copies of government documents, records, and other information pursuant to our State's Public Records Act ("the Act").
 
 See
 

 N.C. Gen. Stat. § 132-1
 
 (b) (2015) (providing that, because "public records and public information compiled by the agencies of [our] government ... are the property of the people[,].... it is the policy of this State that the people may obtain copies of their public records and public information free or at minimal cost unless otherwise specifically provided by law"). Each Defendant, in his or her official capacity, is a public "agency" as defined in the Act and a custodian of public records under the Act.
 
 See
 

 N.C. Gen. Stat. § 132-1
 
 (a). The essence of Plaintiffs' claims is that, since Defendant McCrory took office in January 2013, the Administration has implemented policies and procedures in order to frustrate the purpose of the Act by (1) intentionally delaying or wrongfully denying access to public records so that Plaintiffs cannot provide timely and thorough information to the public about the Administration's decisions, actions, and policies, and (2) imposing or requesting unreasonable and unjustified fees and charges in connection with requests made under the Act.
 

 *214
 
 Plaintiffs allege several examples of the Administration's delaying tactics, including,
 
 inter alia
 
 :
 

 • That Indy requested copies of Defendant McCrory's travel records on 8 November 2013, spent the next 17 months narrowing and refining the scope of its request, engaged an attorney to pursue the request, and yet still received no records until 13 March 2015, when redacted records were turned over with no explanation then or now regarding the redactions.
 

 • That WRAL requested travel records from Defendant McCrory in February 2015, but had not received the records as of July 2015.
 

 • That N&O requested certain correspondence between members of the Administration regarding the State's sale of the Dorothea Dix property to the City of Raleigh in July 2014, but received no records until 9 June 2015. N&O's subsequent request for additional records connected to the Dix sale has resulted in no records being turned over. WRAL requested similar records in October 2014 but also received no records until 9 June 2015.
 

 • That SELC requested records from the Department of Transportation about a possible expansion of Interstate 77 to include High Occupancy Toll ("HOT") lanes in January 2014 and did not receive records until May 2015-after a contract to construct the HOT lanes had already been signed.
 

 • That WRAL requested email from Defendant McCrory's office related to the proposed move of the State Bureau of Investigation from the Office of the Attorney General in May 2014, but the request was not fulfilled until June 2015, after WRAL threatened litigation over the Administration's nonresponse.
 

 *246
 
 • That NC Policy Watch submitted a public records request in August 2013 to the North Carolina Department of Health and Human Services ("HHS") for records related to a departmental salary freeze and certain subsequent salary increases, but these records have never been provided.
 

 • That The Observer requested a database from the Office of the State Medical Examiner ("OSME")-part of
 
 *215
 
 HHS-that included information compiled by the OSME about every death investigated by medical examiners since 2001, and, in response, HHS provided inaccurate and incomplete data, only turning over the complete database after a one-year delay and threats of legal action.
 

 • That The Alamance News requested records from the Department of Commerce on 11 July 2014 related to certain economic development projects in Alamance and Orange counties, but no records were received as of July 2015.
 

 On 21 July 2015, Plaintiffs commenced this action by the filing of a complaint and issuance of summonses in Wake County Superior Court. Plaintiffs filed an amended complaint ("the Complaint") on 22 July 2015. The Complaint seeks entry of orders (1) "in the nature of a writ of mandamus requiring [the Administration] to comply" with the Act; (2) compelling the Administration to provide any public records requested under the Act, but not yet provided; (3) declaring that certain of the Administration's policies and procedures violate the Act; (4) declaring that, under the Act, the Administration may not collect fees for inspection of public records absent a request for copies of the records; and (5) awarding reasonable attorney fees as permitted under the Act. The Administration filed its answer on 25 September 2015, and, on 17 February 2016, moved for partial judgment on the pleadings pursuant to Rule of Civil Procedure 12(c).
 
 See
 
 N.C. Gen. Stat. § 1A-1, Rule 12(c) (2015). On 26 February 2016, Plaintiffs moved for partial judgment on the pleadings and to compel discovery. The motions came on for hearing at the 23 March 2016 session of Wake County Superior Court, the Honorable John O. Craig, III, Judge presiding.
 

 By order entered 29 April 2016 ("the order"), the trial court denied in part and granted in part the Administration's motion for partial judgment on the pleadings, granted in part Plaintiffs' motion to compel discovery, and postponed ruling on Plaintiffs' motion for partial judgment on the pleadings. Specifically, the trial court dismissed Plaintiffs' claims "pertaining to any public records requests made by any persons other than Plaintiffs ... to Defendants named" in the complaint, but denied the Administration's motion to dismiss Plaintiffs' claims for declaratory relief under the Act, and relief in the nature of a writ of mandamus with regard to public records requests "that have not yet been acted upon in whole or in part"-that is, where the Administration has not yet produced requested public records. The court also denied the Administration's motion to dismiss "to the extent [it] attempt[ed] to dismiss Plaintiffs' claims on grounds that the General Assembly did not authorize Plaintiffs
 
 *216
 
 to assert such claims against [the Administration], including as set forth particularly in the sovereign immunity discussion in
 
 Nat Harrison Assocs., Inc. v. North Carolina State Ports Authority
 
 ,
 
 280 N.C. 251
 
 , 258,
 
 185 S.E.2d 793
 
 (1972) and related cases."
 
 [3]
 
 In connection with this portion of its ruling, the court noted that, while "the procedures and remedies prescribed by [the Act] are exclusive[,].... a request for declaratory relief appears to be the best, if not the only, procedural method [by] which the provisions of [the Act] can be interpreted and construed." Finally, the trial court denied the motions of both parties with regard to Plaintiffs' claims that the Act does not permit the assessment of special service fees where only
 
 inspection
 
 of public records-rather than
 
 copies
 
 of the records-is sought.
 
 [4]
 

 *247
 
 On 3 May 2016, four days after the order was filed, the trial court advised counsel for Plaintiffs and the Administration that it was considering filing a supplemental order to clarify that any issue regarding sovereign immunity would not be ruled upon at that time and requesting that the Administration refrain from filing a notice of appeal until the supplemental order could be filed. On 5 May 2016, the trial court provided Plaintiffs and the Administration with a draft of its supplemental order which clarified that the issue of sovereign immunity had not been properly raised in the trial court. The following morning, the Administration gave written notice of appeal from the order. On 12 May 2016, the Administration filed in the trial court a motion to stay proceedings pending appeal.
 

 On the same day the Administration moved for a stay, the trial court filed its supplemental order denying the Administration's motion for a stay and seeking "to clarify [the order] by modifying a specific portion of said order to reflect the [c]ourt's original intent, as well as to clarify the [c]ourt's position as to a recent defense asserted by the" Administration. Specifically, the supplemental order stated:
 

 Paragraph One of the [o]rder denied a portion of the [Administration's] motion for judgment on the pleadings, insofar as it pertained to the defense of sovereign
 
 *217
 
 immunity, but stated that the question of sovereign immunity could be revisited after completion of the limited discovery permitted in the [o]rder. Upon further reflection, the [c]ourt stated in an email to counsel for the parties, on May 3, 2016, that it would have been more appropriate to take the matter under advisement during the pendency of discovery, rather than characterizing the matter as a provisional denial. However, after conducting additional research, the [c]ourt finds it would be inaccurate to consider the matter as "under advisement" and that the defense of sovereign immunity is not yet ripe for the [c]ourt's consideration [because]....
 

 .... while the [Administration] reserved the right "to assert additional affirmative defenses as discovery warrants and to the extent permitted by law" in their Answer ..., they have not filed a motion to amend their Answer under Rule 15 of the Rules of Civil Procedure. North Carolina case law is clear that sovereign immunity must be raised as an affirmative defense under Rule 8(c) of the Rules. ... The [c]ourt is aware of the line of appellate cases which hold that the defense of sovereign immunity is more than a mere affirmative defense, as it shields a defendant entirely from having to answer for its conduct at all in a civil suit. ...
 
 But the action before this
 
 [
 
 c
 
 ]
 
 ourt is one in which the North Carolina General Assembly has expressly waived sovereign immunity.... The
 
 [
 
 Administration is
 
 ]
 
 decidedly not immune from an action brought under
 
 [
 
 Section
 
 ]
 
 132-9
 
 . If this [c]ourt ultimately finds sovereign immunity to be applicable concerning certain pleadings raised by [P]laintiffs (
 
 e.g.
 
 , because Chapter 132 does not waive sovereign immunity in such a fashion), the defense would only narrowly apply to a mere portion of the Plaintiffs' [c]omplaint. ... When combined with the [Administration's] decision not to raise the defense of sovereign immunity via a motion to amend their Answer up to this point, the [c]ourt is of the opinion that an appeal is premature and that discovery should go forward.
 

 (Emphasis added). Thus, in addition to denying the Administration's motion to stay discovery pending resolution of this appeal, the supplemental order sought to either "clarify" or "modify" the order to explain there was no trial court ruling on sovereign immunity because the
 
 *218
 
 trial court did not believe that the Administration had properly raised that matter.
 

 Grounds for Appellate Review
 

 All parties agree that this appeal is interlocutory. "An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy."
 
 Veazey v. City of Durham
 
 ,
 
 231 N.C. 357
 
 , 362,
 
 57 S.E.2d 377
 
 , 381 (citation omitted),
 
 reh'g denied
 
 ,
 
 232 N.C. 744
 
 ,
 
 59 S.E.2d 429
 
 (1950). "Generally, there is no right of immediate appeal from interlocutory orders and judgments."
 
 Goldston v. Am. Motors Corp.
 
 ,
 
 326 N.C. 723
 
 , 725,
 
 392 S.E.2d 735
 
 , 736 (1990)
 

 *248
 
 . "However,
 
 N.C. Gen. Stat. § 1-277
 
 ... allows a party to immediately appeal an order that either (1) affects a substantial right or (2) constitutes an adverse ruling as to personal jurisdiction."
 
 Can Am S., LLC v. State
 
 ,
 
 234 N.C.App. 119
 
 , 122,
 
 759 S.E.2d 304
 
 , 307,
 
 disc. review denied
 
 ,
 
 367 N.C. 791
 
 ,
 
 766 S.E.2d 624
 
 (2014).
 

 As appellant, it is the Administration's burden to establish an exception that will permit immediate review of the order.
 
 See
 

 Jeffreys v. Raleigh Oaks Joint Venture
 
 ,
 
 115 N.C.App. 377
 
 , 380,
 
 444 S.E.2d 252
 
 , 254 (1994) ("It is not the duty of this Court to construct arguments for or find support for appellant's right to appeal from an interlocutory order; instead, the appellant has the burden of showing this Court that the order deprives the appellant of a substantial right which would be jeopardized absent a review prior to a final determination on the merits.") (citations omitted). The only basis for immediate appellate review asserted by the Administration is that the order involved a ruling on a claim of sovereign immunity. An interlocutory order ruling on a motion for judgment on the pleadings pursuant to Rule 12(c) based upon "sovereign immunity affects a substantial right and warrants immediate appellate review."
 
 Webb v. Nicholson
 
 ,
 
 178 N.C.App. 362
 
 , 363,
 
 634 S.E.2d 545
 
 , 546 (2006) (citation omitted).
 

 This aspect of our State's jurisprudence is clear: in an appeal from an interlocutory order denying a Rule 12 (c) motion based upon sovereign immunity, this Court may reach the merits of arguments grounded in
 
 *219
 
 sovereign immunity
 
 [5]
 
 where that issue was properly pled and argued in the trial court. Our review of the record here reveals that the Administration did neither in this case, and, accordingly, we dismiss this appeal.
 

 I. When and how sovereign immunity must be raised in the trial court
 

 Our Supreme Court has held that sovereign immunity "is more than a mere affirmative defense, as it shields a defendant entirely from having to answer for its conduct at all in a civil suit...."
 
 Craig v. New Hanover Cty. Bd. of Educ.
 
 ,
 
 363 N.C. 334
 
 , 337,
 
 678 S.E.2d 351
 
 , 354 (2009) (citation omitted).
 

 It is an established principle of jurisprudence, resting on grounds of sound public policy, that a state may not be sued in its own courts or elsewhere unless it has consented by statute to be sued or has otherwise waived its immunity from suit. By application of this principle, a subordinate division of the state or an agency exercising statutory governmental functions may be sued only when and as authorized by statute.
 

 Can Am S., LLC
 
 ,
 
 234 N.C.App. at 125
 
 ,
 
 759 S.E.2d at 309
 
 (citations and internal quotation marks omitted). As the Administration concedes, "[o]rdinarily, the failure to plead an affirmative defense results in a waiver [of that defense] unless the parties agree to try the issue by express or implied consent."
 
 Burwell v. Giant Genie Corp.
 
 ,
 
 115 N.C.App. 680
 
 , 684,
 
 446 S.E.2d 126
 
 , 129 (1994) (citation omitted);
 
 see also
 
 N.C. Gen. Stat. § 1A-1, Rule 8(c) (2015) ;
 
 see also
 

 Forbes v. Par Ten Group, Inc.
 
 ,
 
 99 N.C.App. 587
 
 , 598,
 
 394 S.E.2d 643
 
 , 649 (1990) (noting that "failure to plead [an affirmative defense] is a bar to this issue being raised on appeal") (citation omitted),
 
 disc. review denied
 
 ,
 
 328 N.C. 89
 
 ,
 
 402 S.E.2d 824
 
 (1991). The Administration did not plead sovereign immunity in its answer
 
 [6]
 
 and does
 
 *249
 
 not contend that Plaintiffs agreed-either implicitly or explicitly-to try the issue of sovereign immunity by consent.
 
 *220
 
 Instead, the Administration cites case law holding that, although "the better practice [is] to require a formal amendment to the pleadings[,]" generally, "unpleaded defenses, when raised by the evidence, should be considered in resolving a motion for summary judgment[,]"
 
 N.C. Nat'l Bank v. Gillespie
 
 ,
 
 291 N.C. 303
 
 , 306,
 
 230 S.E.2d 375
 
 , 377 (1976), and specifically, that an unpled defense of sovereign immunity should be considered in ruling on a motion for summary judgment where "both parties knew or should have known that an action against a governmental entity ... raises a question of sovereign immunity."
 
 Mullis v. Sechrest
 
 ,
 
 126 N.C.App. 91
 
 , 96,
 
 484 S.E.2d 423
 
 , 426 (1997) (citing
 
 Dickens v. Puryear
 
 ,
 
 45 N.C.App. 696
 
 , 698,
 
 263 S.E.2d 856
 
 , 857-58 (1980),
 
 rev'd in part on other grounds
 
 ,
 
 302 N.C. 437
 
 ,
 
 276 S.E.2d 325
 
 (1981) ),
 
 rev'd on other grounds
 
 ,
 
 347 N.C. 548
 
 ,
 
 495 S.E.2d 721
 
 (1998). The Administration asserts that the holdings in these appeals from summary judgment orders should apply equally to a ruling on a motion for judgment on the pleadings. Assuming
 
 arguendo
 
 that the Administration is correct on that point, the factual circumstances and procedural posture of each cited case renders it inapplicable to this matter.
 

 The above-quoted language from
 
 Mullis
 
 , for example, was part of this Court's analysis of whether the trial court abused its discretion in allowing the "defendants to amend their answer to assert the defense of sovereign immunity."
 
 126 N.C.App. at 94
 
 ,
 
 484 S.E.2d at 425
 
 . Here, in contrast, the Administration did not move to amend its answer, and nothing in the record suggests that either party contemplated sovereign immunity as a possible defense prior to or at the motion hearing. The Administration also cites
 
 Craig
 
 for the proposition that the order here affects a substantial right and is thus immediately appealable, but in that case unlike in the matter at bar, the defendant explicitly asserted the defense of governmental immunity in its answer.
 
 363 N.C. at 335
 
 ,
 
 678 S.E.2d at 352
 
 . Accordingly,
 
 Craig
 
 , like
 
 Mullis
 
 , is inapposite.
 

 The Administration's reliance on
 
 Gillespie
 
 and
 
 Dickens
 
 is similarly misplaced. The
 
 Gillespie
 
 appeal arose from a suit by a bank against a debtor to collect on promissory notes, and the bank's "evidence and
 
 *221
 
 [and the debtor's] admissions establish that [the debtor] executed the five notes upon which this action rests, thereby establishing a
 
 prima facie
 
 case."
 
 291 N.C. at 306
 
 ,
 
 230 S.E.2d at 377-78
 
 . "Nowhere in his answer did [the debtor] assert the defenses[, to wit, that he had an oral agreement with the bank regarding repayment of the notes,]
 
 raised by his affidavits filed in opposition to the motion for summary judgment
 
 ."
 
 Id.
 
 at 306,
 
 230 S.E.2d at 377
 
 (emphasis added). In that limited circumstance, our Supreme Court held that,
 

 in light of the policy favoring liberality in the amendment of the pleadings, either the answer should be deemed amended
 
 to conform to the proof offered by the affidavits
 
 or a formal amendment permitted, the affidavits considered, and the motion for summary judgment decided under the usual rule pertaining to the adjudication of summary judgment motions.
 

 Id.
 
 at 306,
 
 230 S.E.2d at 377
 
 (citations, internal quotation marks, and brackets omitted; emphasis added).
 

 *250
 
 Here, in contrast, it is undisputed that the Administration did not raise the defense of sovereign immunity in its motion for partial judgment on the pleadings or in any affidavit attached thereto. The Administration asserts that sovereign immunity
 
 was
 
 raised at the motion hearing, but there is a critical difference between raising an unpled affirmative defense that would operate as a complete bar to an action in an affidavit attached to a motion and raising such a defense
 
 at the hearing on the motion
 
 . In the former situation, the opposing party is made aware of, and given an opportunity to prepare a response to, the unpled defense, by both written response in opposition to the motion and at the hearing. Thus, the holding in
 
 Gillespie
 
 is explicitly aimed at preventing an overly technical exclusion of a possibly valid affirmative defense from being considered even though the opposing party has been made aware of it. On the other hand, where, as here, the matter of sovereign immunity-a
 
 complete
 
 defense to the entire lawsuit-is raised at best only obliquely in the midst of the hearing on a motion for
 
 partial
 
 judgment on the pleadings, the opposing party is denied any chance to prepare a response.
 

 Our Supreme Court has directly addressed whether a party may raise an unpled affirmative defense for the first time at a motion hearing. In
 
 Dickens v. Puryear
 
 , although the defendant did not plead the statute of limitations-an affirmative defense-in his answer and did not refer to the statute of limitations in his motion for summary judgment, the Court noted that the
 

 *222
 

 plaintiff was not surprised by the limitations defense and had full opportunity to argue and present evidence relevant to the limitations questions
 
 . The [p]laintiff's complaint [was] cast in terms of the tort of intentional infliction of mental distress rather than assault and battery. This demonstrates [the] plaintiff's awareness that the statute of limitations was going to be an issue. [The p]laintiff did present evidence and briefs on the question before [the trial court]. Thus, ... [the] affirmative defense was clearly before the trial court. ... [The] defendants' failure expressly to mention this defense in their motions [was] not held to bar the court's granting the motions on the limitations ground.
 

 302 N.C. 437
 
 , 443,
 
 276 S.E.2d 325
 
 , 329-30 (1981) (internal quotation marks omitted; emphasis added). However, our Supreme Court cautioned that
 

 if an affirmative defense required to be raised by a responsive pleading is sought to be raised for the first time in a motion for summary judgment,
 
 the motion must ordinarily refer expressly to the affirmative defense relied upon
 
 . Only in
 
 exceptional circumstances where the party opposing the motion has not been surprised and has had full opportunity to argue and present evidence
 
 will movant's failure expressly to refer to the affirmative defense not be a bar to its consideration on summary judgment.
 

 Id.
 

 at 443
 
 ,
 
 276 S.E.2d at 329
 
 (emphasis added). Simply put, the circumstances in
 
 Dickens
 
 indicated that the plaintiff was not prejudiced by the technical failure of the defendant to plead and reference an affirmative defense because it was clear that the plaintiff understood the issue was contested and not only had the opportunity to respond, but
 
 had
 
 responded.
 

 Here, on the other hand, rather than an elevation of substance over form-the goal noted in both
 
 Dickens
 
 and
 
 Gillespie
 
 -the result urged by the Administration would be to allow a technicality of form-the passing mention of an affirmative defense at a hearing-to utterly bar the majority of Plaintiffs' claims without providing them the opportunity to make
 
 any
 
 substantive response. This type of "gotcha" result is not due to a mere technical failure to comply with Rule 8. It is precisely the type of unjust and inequitable outcome about which our Supreme Court cautioned in
 
 Dickens
 
 . It is undisputed that the Administration's answer did not assert sovereign immunity as an affirmative defense,
 
 *223
 
 the issue was not mentioned in its motion for partial judgment on the pleadings or any of the Administration's other filings in the trial court, neither party briefed the issue of sovereign immunity, and Plaintiffs were not prepared to and did not argue the issue at the motion hearing. Indeed, the record on appeal makes clear that Plaintiffs did not
 
 *251
 
 believe that the issue of sovereign immunity was raised at all at the hearing and were taken completely by surprise when the resulting order included an ambiguous reference to the issue, ultimately causing the trial court to file its supplemental order to clarify that the question had not been properly raised or argued at the hearing.
 

 In sum, precedent reveals that the affirmative defense of sovereign immunity must generally be raised in a defendant's answer or by motion, and the circumstances here do not fall into any of the narrow exceptions to that rule permitted in the cases cited by the Administration.
 
 [7]
 
 Thus, the affirmative defense of sovereign immunity was not before the trial court because the "failure expressly to refer to the affirmative defense [was] a bar to its consideration on" the Administration's motion for partial judgment on the pleadings.
 
 See
 
 id.
 

 Despite having failed to plead the defense in its answer or motion or briefs in support of its position on its motion, and notwithstanding the undisputed fact that Plaintiffs were thus denied any opportunity to respond to the defense, the Administration contends that it did raise and argue the issue of sovereign immunity during the motion hearing. The transcript of the hearing belies this assertion.
 

 At the hearing, the Administration began by making extensive arguments on mootness and exclusivity of the Act's remedies, after which counsel for the Administration informed the trial court that he "want[ed] to raise one other point[:]"
 

 So you start from the proposition that there-that we say that
 
 these really are exclusive remedies
 
 . And, again, I told you I would remind you of a statement in
 
 Shella vs. Moon
 
 .... But if it were not apparent that these remedies
 
 *224
 
 were limited, as we said, and comprehensive, the Court in
 
 Shella
 
 says-and this is right in the wheelhouse of the court[']s case. It deals with
 
 the mootness issue
 
 .
 

 So if you're dealing with a mootness issue, you're having to ask a question what are the remedies? So have the remedies been satisfied? So this is not dicta. This is not-they're not side stepping, they're not commenting for the good of the populous [sic]. They are making a decision in a case about mootness.
 

 In the
 
 Shella
 
 case, dealing with a 132-9 issue where the documents have been produce[d], is this quote: "The only recovery provided for by this statute is the opportunity to inspect public records."
 

 And from our standpoint, not to be cute, but "only" means "only." So we know when it's indisputable that there's no declaratory relief that is available under that statute.
 

 Now, I told you I was going to hand up that case; the only case I'm going to hand you.
 

 I want to raise one other point that we did not directly raise in our brief
 
 , but I think it's important here.
 

 [The trial court accepted a case handed up by counsel.]
 

 And this case, this proposition has been cited in several cases. As best I can tell it began with this case[,] this
 
 North Carolina Port Authorities
 
 case in 1972. It's this principle which is located on Page 4 of the opinion. I've highlighted it. If you'll see that highlighted provision.
 

 But, if court is with me, what that says is that, in this case, it says the [S]tate is immune from suit unless and until it is expressly consented to be sued. It is for the [G]eneral [A]ssembly to determine when and under what circumstances the [S]tate may be sued.
 

 And when statutory provision-and we think this is what the public records law is-
 
 when statutory provision has been
 

 *252
 

 made for an action against the
 
 [
 
 S
 
 ]
 
 tate
 
 ,
 
 the procedure described by the statute must be
 
 [
 
 followed and
 
 ]
 
 the remedies thus supported
 
 [sic]
 
 are, they underlined this word, "exclusive."
 

 *225
 
 So if you considered the fact the way the statute has set out the remedies, you consider then the judicial statement of the Court of [A]ppeals in
 
 Shella
 
 that this is all that they are;
 
 the only remedy is
 
 [
 
 to compel
 
 ]
 
 inspection
 
 .
 
 [8]
 
 And you considered this line of cases
 
 where because
 
 [
 
 of
 
 ]
 
 a waiver of sovereign immunity there must be exclusivity
 
 unless you risk a balance and create a cause of action the legislature didn't authorize
 
 when it waived immunity
 
 .
 

 [For a]ll of those reasons[,] we say we would urge the [c]ourt strongly to consider to say [sic] that declaratory judgment in this context really isn't a[ ] judicial add on that was not authorized. That's the first part of what we would urge the [c]ourt to reconsider or consider further with respect to that issue.
 

 (Emphasis and italics added). This excerpt makes clear that trial counsel did not assert sovereign immunity as a bar to the entire action, but rather, argued only that,
 
 because the Act is a waiver of sovereign immunity
 
 , its remedy provisions are exclusive and do not include declaratory judgments. This understanding of counsel's argument is further supported by a review of the case referred to-
 
 Nat Harrison Assocs., Inc. v. N.C. State Ports Auth.
 
 ,
 
 280 N.C. 251
 
 ,
 
 185 S.E.2d 793
 
 ,
 
 reh'g denied
 
 ,
 
 281 N.C. 317
 
 ,
 
 188 S.E.2d 900
 
 (1972). The section of that case to which the
 
 *226
 
 Administration's trial counsel referred is the following:
 

 An action against a commission or board created by statute as an agency of the State where the interest or rights of the State are directly affected is in fact an action against the State. The State is immune from suit unless and until it has expressly consented to be sued. It is for the General Assembly to determine when and under what circumstances the State may be sued.
 
 When statutory provision has been made for an action against the State, the procedure prescribed by statute must be followed, and the remedies thus afforded are exclusive
 
 . The right to sue the State is a conditional right, and the terms prescribed by the Legislature are conditions precedent to the institution of the action.
 

 Id.
 
 at 258,
 
 185 S.E.2d at 797
 
 (quoting
 
 Great Am. Ins. Co. v. Gold
 
 ,
 
 254 N.C. 168
 
 , 172,
 
 118 S.E.2d 792
 
 , 795 (1961) ) (citations, internal quotation marks, and ellipsis omitted). No issue regarding sovereign immunity was presented to our Supreme Court in
 
 Nat Harrison Assocs.
 
 , which concerned a contractor's suit against a State agency, seeking to recover damages after the agency retained the contractor's final payment as liquidated damages for construction delays.
 
 Id.
 
 at 255,
 
 185 S.E.2d at 795
 
 . The question before the Court
 
 *253
 
 was whether "the trial judge correctly found that there was no provision in the contracts for recovery of damages for delays or for losses by reason of the devaluation of the German mark."
 
 Id.
 
 at 259,
 
 185 S.E.2d at 797
 
 . Thus, the quotation from
 
 Great Am. Ins. Co.
 
 was cited not in regard to any issue of sovereign immunity, but instead, as part of the analysis of whether the statute permitting suits by contractors against the State for monies owed would allow the contractor to recover for damages not provided for in its individual contract with the State agency.
 
 See
 

 id.
 
 at 258-59,
 
 185 S.E.2d at 797
 
 . The Court answered that the contractor could not so recover because,
 

 [u]nder the provisions of [section] 143-135.3, the plaintiff is only entitled to recover 'such settlement as he claims to be entitled to under terms of his contract' and since [the] plaintiff's claims as set out in the second and third counts of its complaint did not arise under the terms of its contracts, the court properly entered summary judgment on these two counts.
 

 Id.
 
 at 259,
 
 185 S.E.2d at 797-98
 
 . Neither the case nor language cited by the Administration to the trial court concerned sovereign immunity,
 
 *227
 
 but rather supported its contention regarding
 
 exclusivity of remedies where sovereign immunity has been waived
 
 , the very argument the Administration had all along advanced here in the court below. The trial court appreciated that the Administration was making an exclusivity argument, not a sovereign immunity argument, as reflected by its response that it was "fully aware of the limitations that the case law imposes on the
 
 exclusivity
 
 question." (Emphasis added). Thus, the record on appeal and the hearing transcript demonstrate that the Administration did not raise and argue sovereign immunity as a basis for partial judgment on the pleadings, instead advancing only arguments on mootness and exclusivity of remedies.
 

 In conclusion, the Administration's failure to properly plead, raise, or argue the affirmative defense of sovereign immunity below was "a bar to its consideration on" the motions being heard in the trial court, and, to the extent the order purported to address that matter,
 
 [9]
 
 it is of no effect. The interlocutory order appealed from presents no issue of sovereign immunity entitling the Administration to immediate appellate review, and, accordingly, this appeal is
 

 DISMISSED.
 

 Judges BRYANT and CALABRIA concur.
 

 [2]
 

 Some of the named Defendants have left the Administration since the commencement of this lawsuit. As of the date this opinion is filed, McCrory, Skvarla, van der Vaart, Perry, and Kluttz are still serving in their positions, while Vos, Daughtridge, Tata, and Gray have been replaced. Rick Brajer is the current Secretary of the Department of Health and Human Services, Kathryn Johnston is the current Secretary of the Department of Administration, Nick Tennyson is the current Secretary of the Department of Transportation, and Jeff Epstein is the current Secretary of the North Carolina Department of Revenue.
 

 [3]
 

 The meaning and effect of this portion of the order is discussed in greater detail
 
 infra
 
 .
 

 [4]
 

 Thus, the record reflects that the trial court did not postpone ruling on all aspects of Plaintiffs' motion for partial judgment on the pleadings, having denied the motion in regard to the special service charge "[a]t this juncture...."
 

 [5]
 

 "[I]n most immunity-related interlocutory appeals, we have declined requests that we consider additional non-immunity-related issues on the merits."
 
 Bynum v. Wilson Cty.
 
 ,
 
 228 N.C.App. 1
 
 , 7,
 
 746 S.E.2d 296
 
 , 300 (2013) (citing
 
 Green v. Kearney
 
 ,
 
 203 N.C.App. 260
 
 , 266,
 
 690 S.E.2d 755
 
 , 764-65 (2010) ;
 
 Meherrin Indian Tribe v. Lewis
 
 ,
 
 197 N.C.App. 380
 
 , 384-85,
 
 677 S.E.2d 203
 
 , 207-08 (2009),
 
 disc. review denied
 
 ,
 
 363 N.C. 806
 
 ,
 
 690 S.E.2d 705
 
 (2010) ;
 
 Boyd v. Robeson Cty
 
 .,
 
 169 N.C.App. 460
 
 , 464-65,
 
 621 S.E.2d 1
 
 , 4,
 
 disc. review denied
 
 ,
 
 359 N.C. 629
 
 ,
 
 615 S.E.2d 866
 
 (2005) ),
 
 rev'd in part on other grounds
 
 ,
 
 367 N.C. 355
 
 ,
 
 758 S.E.2d 643
 
 (2014).
 

 [6]
 

 At oral argument before this Court, the Administration observed that sovereign immunity may be raised via Rule of Civil Procedure 12(b)(6) and noted that its answer stated as an affirmative defense that Plaintiffs "fail[ed] to state a claim upon which relief may be granted."
 
 See
 
 N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) (2015). However, the Administration did not mention sovereign immunity as the basis for a Rule 12(b)(6) dismissal in its answer, in its motion for partial judgment on the pleadings, or during oral argument at the motion hearing. Accordingly, case law permitting immediate appellate review of interlocutory Rule 12(b)(6) dismissals based upon sovereign immunity claims is inapplicable here.
 
 See
 

 Murray v. Univ. of N.C. at Chapel Hill
 
 , --- N.C. App. ----, ----,
 
 782 S.E.2d 531
 
 , 536 ("[A]lthough [the] defendant's motion to dismiss referred to Rule 12(b)(6) as well as Rule 12(b)(1), the motion did not mention sovereign immunity. During the oral argument, where [the] defendant raised the sovereign immunity doctrine for the first time, [the] defendant relied only on Rules 12(b)(1) and 12(b)(2) in arguing that the complaint was barred by sovereign immunity and did not rely upon Rule 12(b)(6).... Further, since neither [the] defendant's written motion nor its oral argument at the hearing relied on Rule 12(b)(6) in connection with the sovereign immunity defense, the case law authorizing interlocutory appeals for denial of a Rule 12(b)(6) motion based on sovereign immunity does not apply."),
 
 disc. review as to additional issues allowed
 
 , --- N.C. ----,
 
 787 S.E.2d 22
 
 (2016). Review of
 
 Murray
 
 on the basis of a dissent is currently pending in our Supreme Court.
 

 [7]
 

 The Administration also cites cases in which trial court rulings on Rule 12(b)(6) motions to dismiss based upon a plaintiff's failure to allege the defendant's waiver of sovereign immunity have been approved.
 
 See, e.g.
 
 ,
 
 Paquette v. Cty. of Durham
 
 ,
 
 155 N.C.App. 415
 
 , 418,
 
 573 S.E.2d 715
 
 , 717 (2002) (noting that our appellate courts have "consistently disallowed claims based on tort against governmental entities
 
 when the complaint failed to allege a waiver of immunity
 
 ") (citations omitted; emphasis added),
 
 disc. review denied
 
 ,
 
 357 N.C. 165
 
 ,
 
 580 S.E.2d 695
 
 (2003). However, the Administration did not move to dismiss Plaintiffs' complaint on this basis and makes no argument in this regard in its effort to establish a ground for appellate review of the order.
 

 [8]
 

 In
 
 Shella v. Moon
 
 , the plaintiff sought release of documents related to a condemnation proceeding against her by filing an order to compel disclosure pursuant to section 132-9.
 
 125 N.C.App. 607
 
 , 608-09,
 
 481 S.E.2d 363
 
 , 364 (1997). After all litigation connected to the condemnation was concluded, a representative of our State's Department of Transportation offered the records for the plaintiff's review.
 
 Id.
 
 at 609,
 
 481 S.E.2d at 364
 
 . After the State defendants moved for summary judgment, the "plaintiff moved to amend [her] complaint to add certain [additional] defendants and request compensatory and punitive damages."
 

 Id.
 

 The trial court granted summary judgment to the defendants, thereby denying the plaintiff's motions, and from that ruling, the plaintiff appealed.
 

 Id.
 

 This Court noted that "the only recovery provided for by this statute [section 132-9] is the opportunity to inspect public records" and held that, because "she has been granted the relief she sought by initiating this action under [section] 132-9[,] ... her case must be dismissed [as moot]."
 
 Id.
 
 at 610,
 
 481 S.E.2d at 364-65
 
 . In citing
 
 Shella
 
 in support of the Administration's exclusive
 
 remedy
 
 argument, its trial counsel appears to be conflating the concepts of recovery and remedy. "Recovery" is defined as "[t]he regaining or restoration of something lost or taken away[;] [t]he obtainment of a right to something (esp. damages) by a judgment or decree[; or a]n amount awarded in or collected from a judgment or decree[,]" while a "remedy" is a "means of enforcing a right or preventing or redressing a wrong; legal or equitable relief."
 
 Black's Law Dictionary
 
 1302, 1320 (Deluxe 8th ed. 2004). Plaintiffs here, unlike the plaintiff in
 
 Shella
 
 , are not asking to
 
 recover
 
 damages from the Administration. Rather, Plaintiffs seek the
 
 remedy
 
 of a declaratory judgment. As such, while
 
 Shella
 
 may be pertinent regarding the Administration's mootness argument, it is unavailing in connection with its exclusive remedies contention.
 

 [9]
 

 While no party took appeal from the supplemental order, we note that it appears the trial court did not intend to rule on the question of sovereign immunity for precisely the reasons discussed in this opinion.